

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-2002

# USA v. Coward

Precedential or Non-Precedential: Precedential

Docket No. 01-2547

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Coward" (2002). *2002 Decisions.* Paper 372.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/372

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 3, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2547

UNITED STATES OF AMERICA

v.

ALFONZO COWARD,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-cr-00088)
District Judge: Hon. Stewart Dalzell

Argued April 1, 2002

Before: SLOVITER, FUENTES and MICHEL,*
Circuit Judges

(Filed July 3, 2002)

Jules Epstein (Argued)
Kairys, Rudovsky, Epstein, Messing
Philadelphia, PA 19106

 Attorney for Appellant
_____

* Hon. Paul R. Michel, United States Circuit Judge for the Federal
Circuit, sitting by designation.


        Patrick L. Meehan
         United States Attorney
        Laurie Magid
         Deputy United States Attorney
         for Policy and Appeals
        Robert A. Zauzmer (Argued)
         Assistant United States Attorney
         Senior Appellate Counsel
        Kathleen M. Rice
         Assistant United States Attorney
        Office of United States Attorney
        Philadelphia, PA 19106

         Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge:

Appellant Alfonzo Coward was convicted for violating 18

U.S.C. S 922(g)(1) (2001), possession of a firearm by a felon. His appeal raises two issues: (1) whether the District Court erred in denying his motion to suppress on the ground that the government failed to present at the suppression hearing essential evidence of reasonable suspicion to justify the stop of Coward's vehicle, and (2) whether S 922(g)(1) is a constitutional exercise of Congress' Commerce Clause powers. This court recently decided the latter issue in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001), which is controlling on this panel. We concentrate on the first issue.

I.

BACKGROUND

At the pretrial suppression hearing, Philadelphia Police Lieutenant Michael Chitwood testified that on the evening of September 23, 1998, he and his partner, Terrence Sweeney, were patrolling the area around 43rd and Walnut Streets. Shortly before 9:00 p.m., a call was broadcast over

the police radio requesting the stop of a green Subaru with the license plate BMS 9857, driven by an African-American male. The call did not state the reasons for the requested stop.

Almost immediately after hearing this call, Officers Chitwood and Sweeney saw the vehicle and pulled it over. Chitwood testified that prior to approaching the vehicle, he saw the driver reach for the glove compartment and duck down under the passenger seat before returning to an upright position. When the officers approached the car, the driver, later identified as Coward, stated, "It's not mine." App. at 61. Chitwood then observed a nine-millimeter weapon on the floor of the passenger's side.[1]

Chitwood's testimony was the only evidence offered by the government at the suppression hearing to support the legality of the stop. The government did not present the testimony of the officer who requested the stop by radio nor any evidence demonstrating the reason for the request to stop Coward's vehicle.

The defense argued that all evidence arising out of the stop of Coward's vehicle should be suppressed for lack of reasonable suspicion to justify the stop. In response, the government argued that it "was a lawful stop . . . [b]ased on the radio call." App. at 97. The government argued that the " 'fellow officer rule' . . . kind of imputes the knowledge of the transmitting officer to the receiving officer, whether it is actually transmitted or not." App. at 98. The government advised the District Court both in its memorandum and at the oral argument that there was authority in the Ninth Circuit's decision in United States v. Robinson , 536 F.2d 1298 (9th Cir. 1976), that "[e]ffective law enforcement cannot be conducted unless police officers can act on

directions and information transmitted by one officer to another; and that officers who must often act swiftly, cannot be expected to cross-examine fellow officers about

---

1. Coward disputes these facts, specifically whether he reached in the car and whether he made any statement to the officers, but these factual disputes are not relevant to the issues on appeal.

3

the foundation for the transmitted information." App. at 97 (quoting Robinson, 536 F.3d at 1299).2

Following the arguments of the government and counsel for Coward, the District Court at the pretrial hearing on January 4, 2001, denied the motion to suppress, noting that it was sufficient that Chitwood reasonably relied on the radio request. App. at 101 (stating that Chitwood's testimony demonstrated "ample reasonable suspicion, indeed fear, on the part of . . . Chitwood that[led] to the search"). In an amendment to the order to suppress filed the same day, the District Court added that the burden was on the defendant to show that there was no reasonable suspicion behind the police radio request. The court stated:

> The question then becomes who has the burden of showing that there was no reasonable suspicion behind the police radio request. It seems to us that the Government, having prima facie shown the reasonableness of Sergeant Chitwood's behavior, should not have to take on the added burden of looking behind the request from police radio. Since the defendant has as much access to this proof as the Government, it seems to us not excessive to place the burden of such proof upon the party claiming that the radio dispatch was illegitimate. As there is not a scintilla of evidence in this record regarding such illegitimacy, we will not infer it retrospectively absent some basis for doing so.

App. at 27. On February 26, 2001, the defense moved to reconsider that order and on March 5, 2001, the District Court denied that motion reiterating the reasons given in the January 4, 2001 Order. App. at 124.

Thereafter, evidence derived from the stop of Coward's vehicle was admitted at the jury trial. On June 13, 2001, Coward was found guilty of being a felon in possession of a firearm that had traveled in interstate commerce in

---

2. Although the government noted that under Robinson, "the officer who issues a Wanted Bulletin must have a reasonable suspicion sufficient to justify a stop," App. at 96, it did not advise the court of the government's necessity to produce such evidence.

4

violation of 18 U.S.C. S 922(g)(1) and was sentenced to sixty-eight months imprisonment and three years of supervised release. Coward moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) on the Commerce Clause issue. The District Court denied his motion. United States v. Coward, 151 F. Supp. 2d 544 (E.D. Pa. 2001). This is the direct appeal of that judgment pursuant to 18 U.S.C. S 1291.

II.

DISCUSSION

A.

Suppression of Evidence

We review the District Court's denial of the motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over questions of law. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

1. Proof of Reasonable Suspicion

The government concedes, as it must, that it did not meet its burden of proof in establishing that the stop of Coward's car was based on reasonable suspicion. Br. of Government at 4. The government further acknowledges that the District Court incorrectly shifted the burden of proof to the defendant on this issue.

Under the applicable law, the government was required to present evidence at the suppression hearing of the requesting police officer's reasonable suspicion. In Whitely v. Warden, 401 U.S. 560 (1971), the Supreme Court held that although a police officer may rely on the representations of other officers when making an arrest, the officers requesting assistance must have sufficient information to show probable cause. Id. at 568 ("[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.").

The Supreme Court reached a similar result in United States v. Hensley, 469 U.S. 221 (1985). In that case, the Supreme Court stated:

> [W]hen evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest. It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance.

Id. at 231 (emphasis in original). Hensley makes clear that if a flyer or bulletin was issued without reasonable suspicion, the stop made in "the objective reliance upon it violates the Fourth Amendment." Id. at 232. "Assuming the police made a Terry[v. Ohio, 392 U.S. 1 (1968)] stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop." Id. at 233 (emphasis in original). Our court reached the same conclusion in Berg v. County of Allegheny, 219 F.3d 261, 270-71 (3d Cir. 2000), where we concluded that an arrest violated the Fourth Amendment because the government officials who issued the arrest warrant, which was later executed by another police officer, did not have probable cause. Therefore, the law at the time of the suppression hearing on Coward's motion was clear that a finding of reasonable suspicion to justify the stop required the presentation of evidence by the government that the officer who issued the radio bulletin had reasonable suspicion, not simply that it was reasonable for the arresting officer to have relied on the bulletin. The government presented no such evidence.

In addition, the District Court erred in holding the burden was on the defense to prove reasonable suspicion. Once a defendant has challenged the admissibility of such evidence, the government must bear the burden of proving the existence of reasonable suspicion. See Florida v. Royer, 460 U.S. 491, 500 (1983) (stating that government has burden of proving seizure was "sufficiently limited in scope and duration to satisfy the conditions of an investigative

6

seizure"); United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) ("once the defendant has established a basis for his motion . . . the burden shifts to the government to show that the search or seizure was reasonable").

The parties do not dispute that the evidence offered in the District Court was insufficient or that the burden of proving reasonable suspicion should have been on the government. The only question before us is the appropriate resolution. Coward requests that we reverse the denial of his motion to suppress and order a new trial at which all evidence derived from the stop of his vehicle will be suppressed. The government requests that we remand the case to allow the District Court to decide whether the government should be given an opportunity to introduce new evidence on the issue of reasonable suspicion.

2. Reopening the Suppression Hearing

The question of whether the government may augment the record at a suppression hearing after a remand following the conviction of the defendant is analogous to the question of whether the government may reopen its case after resting. United States v. Vastola, 915 F.2d 865, 876

(3d Cir. 1990) (citing United States v. Blankenship, 775 F.2d 735, 740-41 (6th Cir. 1985)). In Vastola , we noted that decisions to reopen proceedings are "traditionally a discretionary matter for the district court." Id. (citing Blankenship, 775 F.2d at 740-41). For example, we review a district court's decision on a motion to reopen for abuse of discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 332 (1971). However, we have cautioned that " 'courts should be extremely reluctant to grant reopenings.' " United States v. Kithcart , 218 F.3d 213, 219 (3d Cir. 2000) (Kithcart II) (quoting Blankenship, 775 F.2d at 740).

Our decision in Kithcart II provides our most recent analysis of this issue. In United States v. Kithcart, 134 F.3d 529, 532 (3d Cir. 1998) (Kithcart I), we reversed a district court's denial of a motion to suppress for lack of probable cause and remanded the case to determine if the evidence could support a finding of the lesser standard of reasonable suspicion. On remand, the district court allowed the

introduction of new evidence on the revisited suppression motion that had not been presented at the initial hearing. Kithcart II, 218 F.3d at 217. On appeal, we held that the district court erred in allowing the prosecution to present additional testimony without explanation of its failure to introduce the evidence at the original suppression hearing. Id. at 221.

In Kithcart II, we set forth a number of factors that a court must consider in deciding whether to permit reopening. We stated that "[w]hen faced with a motion to reopen, the district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted." 218 F.3d at 220 (citing Blankenship, 775 F.2d at 740; 28 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure S 6164 (1993)). A critical factor in evaluating prejudice is the timing of the motion to reopen. As the court stated in Blankenship:

> If [the motion to reopen] comes at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced after reopening, it is not nearly as likely to be prejudicial as when reopening is granted after all parties have rested, or even after the case has been submitted to the jury. Where, as in this case, reopening is permitted after the government has rested its case in chief, but before the defendant has presented any evidence, it is unlikely that prejudice sufficient to establish an abuse of discretion can be established.

775 F.2d at 741.

The Blankenship court offered further guidelines for

courts to use in deciding whether to reopen a proceeding:

> In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate,

> and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

Id. (quoting United States v. Thetford , 676 F.2d 170, 182 (5th Cir. 1982) (quotation omitted)).

In Kithcart II, we placed emphasis on the need for an adequate explanation of the failure to present the relevant evidence earlier. "In order to properly exercise its discretion the district court must evaluate that explanation and determine if it is both reasonable, and adequate to explain why the government initially failed to introduce evidence that may have been essential to meeting its burden of proof." Kithcart II, 218 F.3d at 220. In that case, we reversed the district court's decision to reopen the suppression hearing on remand because "the government offered absolutely no explanation for its initial failure to present the additional witnesses at the original suppression hearing, nor did the district court demand an explanation." Id. at 217.

We have made clear that the " 'party moving to reopen should provide a reasonable explanation for failure to present the evidence [initially].' " Kithcart II, 218 F.3d at 220 (alteration in original) (quoting Blankenship , 775 F.2d at 741 (quoting Thetford, 676 F.2d at 182)). Consideration should be given to whether the law on point at the time was unclear or ambiguous, as well as to whether new evidence came to light after the proceedings closed. Id . (suggesting reopening inappropriate because the government "was fully aware of what it had to establish to successfully oppose Kithcart's suppression motion" and nothing suggested "that evidence was either newly discovered or unavailable during the first hearing"); see also Vastola, 915 F.2d at 876 (remanding determination on adequacy of government's explanation for delay in sealing wiretap tapes because government may have relied on a case that was later overruled by the Supreme Court).

Unlike in Kithcart II where the government offered no explanation for its failure to present the evidence, the

government in this case offers two justifications for its failure to produce evidence that would have satisfied its burden of proof: (1) a mistake due to the "relative inexperience" of the prosecutor, and (2) the acquiescence of the judge. The government proffers no evidence of its assertion that the prosecutor was indeed inexperienced, stating that such proof would be provided on remand. We note that the prosecutor's "inexperience" did not prevent the government from selecting her to handle the obligations of a criminal trial and, indeed, she secured Coward's conviction. Moreover, there is testimony at the suppression hearing suggesting that the prosecutor was familiar with the controlling precedent on this issue. App. at 98-99 (discussing applicability of Hensley and Berg). In fact, at the suppression hearing the prosecutor quoted from United States v. Robinson, 536 F.2d 1298 (9th Cir. 1976), a case that specifically articulated the government's burden to prove that the directing officer had reasonable suspicion to support a stop. App. at 96-97. As for the judge's misplaced acquiescence to the government's faulty interpretation of the law, the government may not shift the blame to the District Court for its own failure to advise the court of the applicable law and to bear its burden of proof on a clearly established requirement. At oral argument, government counsel restated its argument, making clear that the government was not suggesting that the court somehow induced the government's failure to submit the missing evidence.

A district court may consider the purpose for reopening. In Blankenship, the court stated, "[r]eopening is often permitted to supply some technical requirement such as the location of a crime--needed to establish venue--or to supply some detail overlooked by inadvertence." 775 F.2d at 740 (citing United States v. Hinderman, 625 F.2d 994, 996 (10th Cir. 1980)). Nothing suggests that the government in Coward's case "overlooked" a"detail" by "inadvertence." Instead, the government neglected to put on evidence it had readily available to it, out of a faulty interpretation of the law. This case is not one in which the misinterpretation can be justified because the law was ambiguous or changing. The government's burden of proof to show probable cause is not merely a "technical

requirement" as in Blankenship but a critical requirement of criminal law.

We refrain from expressing our view as to whether the government has provided a reasonable and adequate explanation for its failure to present evidence that the requesting officer had reasonable suspicion to justify the stop, because we believe the District Court is the appropriate body to weigh the government's arguments and evidence in favor of reopening. In Vastola, we remanded the determination of whether the government had a reasonable

explanation because "the district court should be entitled to exercise its discretion to decide whether the government should now be permitted . . . to offer an explanation for its violation . . . . It seems to us that this threshold determination . . . is similar to that on a ruling on a motion by the government to reopen, traditionally a discretionary matter for the district court." 915 F.2d at 876 (citing Blankenship, 775 F.2d at 740-41).

For the reasons articulated, we will remand to the District Court to evaluate the government's request to reopen the suppression hearing in light of the considerations expressed herein.

B.

Validity of Section 922(g)

In Coward's brief, he argued that possession of a firearm that has previously traveled in interstate commerce does not have a substantial relation to and/or impact on interstate commerce and thus falls outside of Congress' authority under the Commerce Clause, U.S. Const., art. I, S 8, cl. 3. On that basis, Coward argued that 18 U.S.C. S 922(g)3 was not constitutionally applied to him. However,

_____

3. 18 U.S.C. S 922(g) reads in part:

     (g) It shall be unlawful for any person --

     (1) who has been convicted in any court of, a crime punishable
     by imprisonment for a term exceeding one year;

11

his brief was written without the benefit of this court's recent decision in United States v. Singletary , 268 F.3d 196 (3d Cir. 2001).

In Singletary, we examined this precise issue in detail and held that "proof . . . that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element" of the statute. Id. at 205. Taking note of our prior decision in United States v. Gateward, 84 F.3d 670 (3d Cir. 1996), we scrutinized the same line of Commerce Clause decisions of the Supreme Court to which Coward directed our attention and ruled that S 922(g) was constitutional. See id. at 200- 205 (analyzing Jones v. United States, 529 U.S. 846 (2000), United States v. Morrison, 529 U.S. 598 (2000), United States v. Lopez, 514 U.S. 549 (1995), Scarborough v. United States, 431 U.S. 563, 564 (1977)). In light of the binding effect we give to precedential opinions of panels of this court, we reject Coward's challenge to S 922(g). See 3d Cir. Internal Operating P. 9.1.

Despite the rejection of identical constitutional challenges in Singletary, Coward maintains that Singletary did not

address his challenges based on statutory construction and thus has no preclusive effect over those challenges. Reply Br. at 5-6. Coward argues that the term "possess in or affecting interstate commerce" in S 922(g) cannot include the intrastate possession of a gun that once traveled in interstate commerce because to do so would violate three principles of statutory construction: (1) the rule of lenity and strict construction of criminal statutes; (2) the necessity to construe statutes to give meaning to each phrase and render no phrase superfluous; and (3) the rule that statutes be construed to avoid grave constitutional questions. Br. of Appellant at 23-31.

_____

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

12

Although Singletary does not directly address these rules of statutory construction, it effectively addresses and overcomes Coward's arguments. In Singletary, we examined the phrases used in S 922(g) and compared them to the language of the statutes at issue in other Commerce Clause cases to find the language constitutional. 268 F.3d at 204. Reading the statute according to the interpretation given by this court in Singletary, as we must, we cannot find any violations of these tenets of statutory construction and decline to grant relief on this issue.

III.

CONCLUSION

For the reasons stated herein, we will remand this case to the District Court to decide, in its discretion, whether to allow the government to present additional evidence in opposition to the suppression motion. In so considering, the District Court must consider the factors articulated above, including whether or not the government has an adequate and reasonable explanation for its failure to present the evidence initially and whether the presentation of additional evidence will prejudice the defendant.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13