

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-2002

# USA v. Carvajal-Garcia

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4532

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Carvajal-Garcia" (2002). *2002 Decisions.* Paper 782.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/782

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4532

UNITED STATES OF AMERICA

v.

EDWIN CARVAJAL-GARCIA,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 01-cr-00501)
District Judge: Honorable Joseph E. Irenas

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2002

Before: BARRY, AMBRO and GARTH, Circuit Judges

(Opinion filed     November 27, 2002   )

OPINION

AMBRO, Circuit Judge

Appellant Edwin Carvajal-Garcia entered the United States illegally on at least two occasions.

While unlawfully present the first time, he pleaded guilty to multiple felonies, none related to his alien

status, and was deported. He later reentered the Country illegally, a federal offense for which he was convicted and sentenced to prison. Carvajal-Garcia appeals his conviction and sentence on the grounds that the District Court erred in denying his motions to: 1) dismiss his indictment with prejudice for lack of a speedy trial; 2) dismiss his indictment as based on an invalid deportation order; 3) suppress evidence that was seized during an illegal arrest; and 4) suppress statements taken in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and shall affirm.

## I. Background

Carvajal-Garcia first came to the United States in 1988. He petitioned the Immigration and Naturalization Service ("INS") to grant him asylum, but his efforts were unsuccessful. The INS ordered him to depart the Country voluntarily by October 29, 1990, or be deported. He spurned both options, elected to remain illegally, and was later charged with more than twenty offenses involving the attack and rape of two women. In 1991 he pleaded guilty to four felonies – kidnapping, aggravated sexual assault, terroristic threats, and unlawful possession of a handgun – and subsequently was sentenced to prison terms of seven and four years, to be served concurrently.

On September 30, 1993, Carvajal-Garcia was paroled into the custody of the INS, which again instigated deportation proceedings on the basis of his felony convictions and status as an illegal alien. The INS later realized that Carvajal-Garcia was already subject to a prior deportation order, the result of his preconviction failure to depart voluntarily, and at a hearing on October 20, 1993, terminated the second, postconviction deportation proceedings. On October 28, 1993, the INS deported Carvajal-Garcia to his native Nicaragua.

At approximately the same time – October 15, 1993 – the New Jersey Parole Board asked the INS to report on Carvajal-Garcia's status. Almost two years later, in June 1995, the INS responded, mistakenly, that Carvajal-Garcia had been granted a voluntary departure, was still in the Country illegally, and subject to INS arrest. In response, the Parole Board issued an arrest warrant. On a date unknown, Carvajal-Garcia returned to the United States. On January 22, 2000, police in East Windsor, New Jersey, stopped for a traffic violation a vehicle driven by Carvajal-Garcia. Upon discovering the outstanding warrant, the officers arrested him.

Carvajal-Garcia subsequently was charged with illegal reentry and illegal reentry following a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He waived his right to a jury trial and on October 2, 2001, was tried in the District of New Jersey. The District Court convicted Carvajal-Garcia on both counts and sentenced him to 46 months imprisonment. This appeal followed.

## II. Discussion

### A. Speedy Trial Act

The Speedy Trial Act mandates that a defendant be brought to trial within 70 days after an indictment or first court appearance, whichever occurs later. See 18 U.S.C. § 3161(c)). If a defendant is not brought to trial within this time, the indictment should be dismissed, though the court may elect, in so doing, to dismiss with or without prejudice, see § 3162(a)(2), a decision we review for abuse of discretion. See United States v. Taylor, 487 U.S. 326, 335-37 (1988); Gov't of the Virgin Islands v. Bryan, 818 F.2d 1069, 1076 (3d Cir. 1987). When making the determination as to prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the

3

offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). In addition, the Supreme Court has instructed courts to examine whether the delay, if any, resulted in prejudice to the defendant. See Taylor, 487 U.S. at 340.

A federal grand jury issued an indictment against Carvajal-Garcia on March 29, 2000. Following his arraignment the same day, Carvajal-Garcia filed several motions, including many that tolled the running of the Speedy Trial Act's 70-day clock. By July 31, 2001 (sixteen months later), 75 non-excludable days had passed since Carvajal-Garcia's indictment.[1] A number of events occurred on that date. Fully aware that Carvajal-Garcia's rights under the Speedy Trial Act had been violated, the Government moved to dismiss the indictment without prejudice under 18 U.S.C. § 3162(a)(2), and the District Court so ordered.[2] The grand jury then reindicted Carvajal-Garcia, again charging him with the same crimes. Carvajal-Garcia also moved to dismiss the second indictment with prejudice, and the District Court refused.

---

[1]Both sides have detailed at length the complicated procedural history of this case, including their calculations as to which periods of time may be applied to the Speedy Trial Act's 70-day time limit. Because both parties accept that 75 non-excludable days elapsed between March 29, 2000, and July 31, 2001, see Def.'s Br. at 38-39; Gov't Br. at 11, it is not necessary for us to repeat this information here.

[2]Almost simultaneously, on August 1st Carvajal-Garcia, unaware that a second indictment had been issued the day before, moved on Speedy Trial Act grounds to dismiss the first indictment, but requested the District Court do so with prejudice. At a hearing on September 7th, the District Court stated it was giving no weight to its prior order and was considering anew the issue of whether the first indictment should be dismissed with or without prejudice. The District Court denied Carvajal-Garcia's motion that same day. Thus, we conclude from the record that the District Court dismissed the first indictment pursuant to Carvajal-Garcia's motion.

4

In its decision to dismiss the first indictment without prejudice, the District Court considered each of the factors required by Congress and the Supreme Court. First, the District Court noted that the statutory maximum sentence for violating 8 U.S.C. § 1326(a) and (b)(2) is a prison term of twenty years, persuasive evidence that Congress considers the illegal reentry into the United States by a felon to be a serious crime. Second, the 70-day time limit had been exceeded by only five days, and the District Court found that the prosecution had not neglected its duties. Minor technical matters, prompted largely by the many pretrial motions filed by Carvajal-Garcia, were the cause of the delay. Third, permitting reprosecution after this relatively minor violation would not hinder the administration of the Speedy Trial Act. On the other hand, it would further the administration of justice, particularly the interest of the United States in combating illegal immigration. Finally, the District Court found that Carvajal-Garcia could not demonstrate that the five-day delay prejudiced him in any manner, as would be the case if a significant passage of time resulted in the loss or disappearance of favorable witnesses or evidence. These conclusions, viewed individually or collectively, were not an abuse of the District Court's discretion.

Carvajal-Garcia also argues that the District Court improperly denied his motion to dismiss the second indictment as barred by the Speedy Trial Act. We exercise plenary review over a district court's construction of this federal statute. See Hamilton, 46 F.3d at 273. Carvajal-Garcia argues that because the second indictment charged him with the same crimes as did the first, allowing reindictment would permit the Government to cure any Speedy Trial Act violation by simply moving to dismiss the initial indictment without prejudice and then obtaining a second, identical indictment. The flaw in this argument is that the Speedy Trial Act expressly permits as much. See 18 U.S.C. 3162(a)(2) (stating

5

that "reprosecution" is one of the factors that the court "shall consider" when "determining whether to dismiss the case with or without prejudice"). Congress granted courts the discretion to dismiss an indictment with prejudice if the Government engages in tactical maneuvers designed to circumvent the dictates of the Speedy Trial Act. In this context, no technical actions by the Government appear here; the complicated procedural history of Carvajal-Garcia's case inadvertently resulted in a delay of 75 non-excludable days. The District Court appropriately concluded that adopting Carvajal-Garcia's proffered interpretation would effectively read § 3162(a)(2) out of the Speedy Trial Act. It follows that the District Court's denial of Carvajal-Garcia's motion to dismiss the second indictment was correct.

B.  Deportation Order

Persons convicted under 8 U.S.C. § 1326 of illegally reentering the Country after an earlier deportation may collaterally attack the initial deportation order if they can show that they were deprived of their due process rights at those deportation proceedings. See United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987); 8 U.S.C. § 1326(d). According to Carvajal-Garcia, his earlier deportation following his state crime convictions – an element of his more recent federal convictions for illegal reentry – violated his due process rights because no court of competent jurisdiction ever issued a valid order of deportation.

We exercise plenary review over alleged due process violations, see United States v. Tyler, 281 F.3d 84, 90 (3d Cir. 2002), and the record before us is clear that no such violation occurred. Carvajal-Garcia filed a request for political asylum in September 1989. On July 22, 1990, following a hearing (at which Carvajal-Garcia was represented by counsel), a United States Immigration Judge denied the request, and ordered him to depart the Country voluntarily before October 29, 1990, or he

6

would be deported. The Immigration Judge further stated that the deadline for appealing the decision was August 6, 1990, and told both sides they would be served with a written copy of his memorandum decision. Indeed, the appendix in this case contains a document titled "Oral Decision of the Immigration Judge," see App. at 323-28, but the final page of the decision contains a line for the judge's signature that is blank.

Carvajal-Garcia argues that because his original voluntary deportation order was unsigned, it had no legal effect. Furthermore, he alleges that the Government cannot establish that the Immigration Judge's decision was ever conveyed to him. These arguments are not persuasive. The transcript of his asylum hearing explicitly reflects that Carvajal-Garcia understood the terms of the Immigration Judge's order, and that a written copy of the Court's oral decision was provided to him. See id. at 320. The terms of the Judge's order as explained during the hearing are identical to those found in the written copy. In addition, counsel prepared a Notice of Appeal on Carvajal-Garcia's behalf and dated it August 6, 1990, the deadline set by the Immigration Judge, but the appeal was denied after it was untimely filed on September 5, 1990. See id. at 330, 331. Finally, Carvajal-Garcia does not cite any statutory or regulatory authority for the proposition that an immigration judge's oral decision is not operative unless signed. In sum, Carvajal-Garcia cannot demonstrate that his original deportation proceedings were fundamentally unfair. Hence there was no violation of his due process rights.

C. Suppression of Evidence

Next, Carvajal-Garcia appeals the District Court's denial of his motion to suppress physical evidence obtained from his allegedly illegal arrest. He argues that because the New Jersey Parole Board issued a warrant based on inaccurate information provided by the INS, his arrest pursuant to

that document was unlawful, and evidence the Government seized as a result should have been inadmissible at trial. More specifically, he claims the District Court erred in denying his motion to suppress fingerprints and photographs taken by the New Jersey police on January 22, 2000, and fingerprints taken by the INS on February 17, 2000.

We review a district court's denial of a motion to suppress evidence for clear error as to the underlying factual findings, and exercise plenary review over questions of law. See United States v. Coward, 296 F.3d 176, 179 (3d Cir. 2002). At the outset we note that the different items of challenged evidence deserve separate treatment. Carvajal-Garcia moved to suppress the January 22nd East Windsor police photographs and fingerprints as well as the February 17th INS fingerprints as part of the same motion, alleging all were the fruits of his January 22nd arrest by the East Windsor police. As discussed further in the next section, it appears to us that the February 17th INS fingerprints were not taken incident to the January 22nd arrest, and are more appropriately reviewed in the context of Carvajal-Garcia's asserted Miranda violation.

Therefore, we address first the fingerprints and photographs taken by the East Windsor police officers at the time they arrested Carvajal-Garcia in January 2000. We conclude that the District Court did not err in denying Carvajal-Garcia's suppression request. First, the Government did not introduce at trial either the fingerprints or photographs taken by the East Windsor police. Thus, Carvajal-Garcia's suppression claim as to this evidence is moot. See United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.), cert. denied, 510 U.S. 937 (1993).

Second, even had the Government sought to use the January 22nd photographs and fingerprints, it would have been proper to do so. Carvajal-Garcia claims that probable cause did not

8

exist for the Parole Board to issue the arrest warrant, but his argument is contradicted by the facts. Carvajal-Garcia had been incarcerated for pleading guilty to four felonies. He was paroled to the INS for the purpose of deporting him. The Parole Board later queried the INS as to Carvajal-Garcia's status. The INS replied that he had overstayed a voluntary departure order, was in the Country illegally, and was subject to arrest by the INS. This means that the parole warrant was issued in response to inaccurate information provided by the INS. However, Carvajal-Garcia does not allege, nor can we surmise, any plausible reason for the Parole Board to have questioned the veracity of the INS's communication. The Parole Board had ample probable cause to issue the arrest warrant, and it did so in reasonable reliance on apparently valid information.

Finally, even if the Parole Board lacked probable cause to issue the warrant, the District Court appropriately ruled that the evidence was admissible under the good faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897 (1984); United States v. Hodge, 246 F.3d 301, 307-310 (3d Cir. 2001). "The good faith exception instructs that suppression of evidence 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'" Hodge, 246 F.3d at 307 (quoting United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993)). The good faith exception likewise applies to officers executing an arrest in objectively reasonable reliance on a warrant's authority. See Arizona v. Evans, 514 U.S. 1 (1995). If the Parole Board had probable cause to issue the warrant, and we have already found that it did, it was objectively reasonable for the East Windsor police to rely on that warrant to arrest Carvajal-Garcia, as well as to photograph and

fingerprint him.[3]

D. Miranda Claim

Carvajal-Garcia's final claim is that he was subjected to custodial interrogation in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Again, the East Windsor police arrested Carvajal-Garcia on January 22, 2000. The INS soon learned that he was in custody and wanted to determine if he was the same Carvajal-Garcia it had deported in 1993. On February 16, 2000, INS agents Peter Machtemes and Rod Carney, seeking to interview Carvajal-Garcia, went to the New Jersey correctional facility where he was held. The agents asked Carvajal-Garcia his full name and date and place of birth. After he answered, the agents identified themselves as federal law enforcement officials, and inquired whether Carvajal-Garcia understood English and preferred to have his Miranda rights read in English or Spanish. As requested, the agents read Carvajal-Garcia his rights in English. Carvajal-Garcia then invoked his right to counsel, and the agents ended the interview. However, on February 17th – the very next day – Agent Machtemes returned to the jail and fingerprinted Carvajal-Garcia. The prints were compared to those on the 1993 deportation warrant, revealing that the individual in custody was in fact the same Carvajal-Garcia that the INS had deported seven years earlier.

Carvajal-Garcia claims that the INS agents were required to advise him of his rights before

---

[3]Although we deal more directly with the admissibility of the February 17th INS fingerprints in the next section infra, we note here that this evidence is not similarly covered by the good faith exception. At the time the INS agent fingerprinted Carvajal-Garcia, he was already in custody, meaning the agent's actions involved neither arresting him nor otherwise executing a warrant of any type.

asking any questions, and that any information he provided prior to receiving his <u>Miranda</u> rights should

have been inadmissable at trial.  The District Court ruled that Carvajal-Garcia's initial statements as to

his identity fell within the so-called booking exception to <u>Miranda</u>, and denied his motion to suppress.

We exercise plenary review over such determinations, <u>see</u> <u>United States v. Calisto</u>, 838 F.2d 711,

717-18 (3d Cir. 1988), and determine that the District Court issued this ruling in error, although that

error was harmless.

In <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601 (1990), a plurality of the Supreme Court stated

that <u>Miranda's</u> coverage does not extend to "routine booking" questions asked to secure "biographical

data necessary to complete booking or pretrial services."[4]  But the Supreme Court also noted that

questions designed to elicit incriminatory admissions, even if asked during booking, are not subject to

the exception.  <u>See</u> <u>id.</u> at 601 n.14.

<u>Muniz's</u> booking question exception does not apply to this case.  As an initial, obvious matter,

the INS was not booking Carvajal-Garcia.  He was in a New Jersey jail when the two agents arrived

to question him, and had been there for over three weeks.  But, even assuming the agents had

questioned Carvajal-Garcia at the time he was arrested by the East Windsor police, the booking

exception still would not apply.  The Ninth Circuit has held that this exception "is inapplicable . . .

where the elicitation of information regarding immigration status is reasonably likely to inculpate the

---

[4]This section of Justice Brennan's plurality opinion garnered only four votes, but Chief
Justice Rehnquist concurred separately, also expressing the views of four Justices, that it
was unnecessary to determine whether the challenged statements fell within an exception to
<u>Miranda</u> because the defendant's responses to booking questions were not testimonial and
did not warrant application of the privilege.  <u>See</u> 496 U.S. at 608 (Rehnquist, C.J.,
concurring).

11

respondent." United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1046 (9th Cir. 1990). We agree.

We need not go further, however, in our Miranda analysis because even if we were persuaded by his argument that his rights were violated, any error was harmless. Constitutional harmless error analysis requires us to ask "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." United States v. Henry, 282 F.2d 242, 251 (3d Cir. 2002) (quoting United States v. Barbosa, 271 F.3d 438, 459 (3d Cir. 2001)). The Government contends that it did not use the February 16th interview statements at trial. Instead, it relied on the following three items to prove Carvajal-Garcia's identity: a comparison of fingerprints taken prior to his 1993 deportation and the fingerprints obtained by the INS on February 17, 2002; his sworn statement of September 9, 1992 as to his identity and alienage; and his pretrial stipulations. The sworn statement, predating the February 16, 2000, interview by many years, does not implicate Miranda. Even assuming that the pretrial stipulations as to identity were derived from the unlawfully obtained biographical data, "the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a voluntary statement obtained before Miranda warnings are issued." United States v. DeSumma, 272 F.3d 176, 180-81 (3d Cir. 2001).[5] Finally, fingerprints are nontestimonial evidence, and their admissibility is not affected by whether Miranda warnings properly were given. See, e.g., Williams v. Schario, 93 F.3d 527, 528-29 (8th Cir. 1996); United States v. Snow, 82 F.3d 935, 943 (10th Cir. 1996).

In sum, the Government presented sufficient admissible evidence that demonstrated the

[5]Carvajal-Garcia makes no allegation that his statements were involuntary.

12

defendant illegally reentered the Country and that he did so subsequent to a prior felony conviction.

We are convinced beyond a reasonable doubt that any alleged violation of Carvajal-Garcia's <u>Miranda</u>

rights did not contribute to his conviction on these charges.

III. Conclusion

For the reasons stated, we affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

Thomas L. Ambro

Circuit Judge

13