

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-19-2003

# USA v. Mercedes

Precedential or Non-Precedential: Non-Precedential

Docket 00-2563

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Mercedes" (2003). *2003 Decisions.* Paper 801.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/801

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2563

UNITED STATES OF AMERICA

v.

ARACELIS MERCEDES,
Appellant

Appeal from the United States District Court
for the  Eastern District of Pennsylvania
(D.C. Criminal No. 99-cr-00314-2)
District Court Judge:  Honorable Anita B. Brody

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 4, 2003

Before:  SLOVITER, RENDELL and STAPLETON, Circuit Judges.

(Filed:  February 19, 2003)

OPINION OF THE COURT

RENDELL, Circuit Judge.

        Appellant, Aracelis Mercedes, appeals the District Court's denial of her motion to

suppress evidence of the cocaine seized from her person as well as statements she made to

the officer who arrested her.  We will affirm.

        The following facts were developed at the District Court hearing on the motion to

suppress. The District Court, in an opinion issued from the bench, laid out its findings of fact in exhaustive detail. We, however, refer only to those facts we find pertinent to our discussion.

Mercedes, and a cohort, Pelagio Baret, were arrested en route to Rochester, New York from San Juan, Puerto Rico during a layover at Philadelphia International Airport. Officers of the Drug Enforcement Administration (D.E.A.) in the San Juan and Philadelphia airports learned of circumstances surrounding Mercedes and Baret's travel that they considered suspicious. At the Philadelphia airport, the D.E.A. officers confronted Mercedes and Baret. Initially, the officers merely spoke to Mercedes. Shortly thereafter, Mercedes consented to the search of her carry-on bag and, then, her purse. While the officers searched Mercedes's suitcase, Mercedes engaged in a series of bizarre activities that we do not find necessary to detail other than to note that these activities involved Mercedes seemingly revoking and re-granting consent to search and also wandering toward the bathroom. During one of the various exchanges she had with the officers, Mercedes reached into her purse – which she had been clutching intently and shielding from the officers even after she granted consent to search it – and kept her hand in the purse for several seconds. One of the officers asked Mercedes to remove her hand from the bag. Mercedes verbally agreed, but did not remove her hand, and continued toward the restroom. An officer then placed his hand on Mercedes's arm and removed the half-opened purse from Mercedes's possession. Thereafter, an officer checked the bag and discovered a package wrapped with gray duct tape that she believed, and later confirmed, to contain

2

cocaine – a kilogram's worth – but no weapons.

The officers immediately placed Mercedes under arrest.  One of the officers, who had been translating for the Spanish-speaking Mercedes, read Mercedes her Miranda rights in Spanish.  Mercedes asked if the Government would pay for an attorney, prompting the officer to read her her Miranda rights for a second time.  Mercedes was then taken to the Philadelphia Police Department's station in the airport, where the Spanish-speaking officer processed her.  While the officer asked her for biographical information, Mercedes told the officer that she would only speak to him with an attorney present.  Soon thereafter, however, Mercedes, without prompting, began asking the officer questions regarding her arrest – namely the facts, circumstances and possible penalties of her case.  In response, the officer reminded her that he could not speak to her without an attorney present and that he only wanted to get biographical information.  Then, for a third time, the officer read Mercedes her Miranda rights, and asked her if she wanted to speak to him without an attorney.  Mercedes indicated in Spanish that she did wish to do so.  Thereafter, Mercedes made various incriminating statements.

An ensuing indictment charged Mercedes with one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and one count of knowingly and intentionally possessing with intent to distribute and aiding and abetting the possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1).  Mercedes filed a motion to suppress the cocaine and the statements she made to the arresting officer.  As we have noted, the District Court held a hearing,

3

heard extensive testimony regarding what had transpired, and issued an opinion from the bench denying the motion. Mercedes then entered a conditional plea of guilty, reserving the right to appeal the denial of the motion to suppress as permitted under Federal Rule of Criminal Procedure 11(a)(2). Hence, this appeal. We exercise jurisdiction under 28 U.S.C. § 1291.

Before us, Mercedes argues that the District Court made three errors of law specific to her motion to suppress. We review the denial of the motion to suppress for clear error as to the underlying factual findings and exercise plenary review over questions of law. U.S. v. Coward, 296 F.3d 176, 179 (3d Cir. 2002). Importantly, Mercedes does not challenge the District Court's findings of facts, and an independent review of the record reveals that those findings are well-supported by the record and certainly not clearly erroneous.

Mercedes first argues that, under Florida v. Royer, 460 U.S. 491 (1983), the initial questioning undertaken by the officers constituted a seizure such that all evidence obtained subsequent to that questioning must be suppressed. In Royer, officers stopped a person who fit a "drug courier profile" for questioning in an airport. Id. at 493. The court determined that "when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment." Id. at 501.

4

As the Royer court expressly recognized, however, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking h[er] if [s]he is willing to answer some questions, [or] by putting questions to h[er] if the person is willing to listen." Id. at 497. Moreover, "[a]sking for and examining [a plane] ticket and [a] driver's license [are] no doubt permissible." Id. at 501. The officers here did no more than that and, thus, there was no Fourth Amendment violation.

Next, Mercedes argues that the officers' search of her purse violated the Fourth Amendment and, therefore, the cocaine seized as a result of the search should have been suppressed. The touchstone of Fourth Amendment analysis is reasonableness. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990). For the most part, searches and seizures undertaken without a warrant and probable cause are unreasonable and violate the Fourth Amendment. See U.S. Const. amend. IV. Officers are permitted, however, to conduct an investigatory stop of a person if they reasonably suspect that criminal activity is afoot, Ornelas v. United States, 517 U.S. 690, 693 (1996) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)), and they may conduct a limited search of a person and her surroundings if they have a reasonable suspicion that the she poses a threat to them or those around them. Terry, 392 U.S. at 30. A search based on reasonable suspicion must be restricted to areas under a suspect's immediate control that could contain a weapon. Michigan v. Long, 463 U.S. 1032, 1051 (1983). What constitutes "reasonable suspicion" is not capable of precise articulation, but, rather, the determination is based on "commonsense, nontechnical

5

conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas, 517 U.S. at 695 (citations and internal quotations omitted). In evaluating whether reasonable suspicion existed, the officers' experience should be taken into account. See id. at 700; Terry, 392 U.S. at 30. The basic issue is whether, given the "totality of the circumstances," United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000), "a reasonably prudent man in the circumstances would be warranted in the belief" that criminal activity was afoot or that "his safety or that of others was in danger." Terry, 392 U.S. at 27.

While Mercedes focuses the bulk of her argument before us on whether she consented to the search of her bag, the District Court did not rely on consent in finding that the search was valid. Rather, the District Court concluded that the officers had reasonable suspicion to believe that Mercedes was engaging in criminal activity and that she jeopardized their and others' safety when she placed her hand into her purse. Accordingly, the Court concluded that neither the stop of Mercedes that occurred when the officer grabbed her arm nor the subsequent search of her purse violated the Fourth Amendment. The Court's conclusion that reasonable suspicion existed was based on the officers' observations and experience. The Court credited the officers' testimony and their belief that: Mercedes was attempting to flee; the situation was getting out of control; Mercedes's large purse could carry weapons; and it was too dangerous for one officer to follow Mercedes into the restroom. The Court also noted the suspicious circumstances surrounding Mercedes's flight plans and her initial insistence that she was traveling alone.

6

All of these factors, combined with the fact that she clutched her purse tightly and reached into it, led the Court to conclude that the officers acted with reasonable suspicion, making it irrelevant whether Mercedes consented to the search. The record supports the Court's conclusions that the officers had reasonable suspicion to stop and briefly search Mercedes's purse. Therefore, the officers' actions did not violate the Fourth Amendment.

Finally, Mercedes argues the officers violated her Fifth Amendment rights by eliciting self-incriminating statements from her in violation of Miranda. In Miranda, the Supreme Court held that "certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted in evidence." United States v. Dickerson, 530 U.S. 428, 431-32 (2001) (citing Miranda, 384 U.S. at 436). As is common knowledge, the Miranda warnings include the right to remain silent and the right to an attorney. Nonetheless, not all statements that police obtain after taking a person into custody fall within the safeguards of Miranda. See Rhode Island v. Innis, 446 U.S. 291, 300 (1980) (quoting Miranda, 384 U.S. at 478)). For instance, questioning regarding only biographical data certainly do not. See Pennsylvania v. Muniz, 496 U.S. 582, 601-02(1990) (plurality opinion); United States v. Bishop, 66 F.3d 569, 572 n.2 (3d Cir. 1995) (recognizing a "routine booking exception" to Miranda). Still, officers are required to respect scrupulously a suspect's request for a lawyer and not initiate further interrogation. Oregon v. Bradshaw, 462 U.S. 1039, 1042-44 (1983) (plurality opinion). Whether interrogation that follows a suspect's invocation of her Miranda rights violated the Fifth Amendment depends upon "'whether a valid waiver of the right to counsel and the right to

7

silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.'" Bradshaw, 462 U.S. at 1046 (quoting Edwards v. Arizona, 451 U.S. 477, 486 n.9 (1981)).

The District Court, in finding no violation of the Fifth Amendment or Miranda, noted that, while Mercedes seemed to invoke her right to counsel, she initiated further conversation and that, under the circumstances, she voluntarily and knowingly waived her rights to counsel and to remain silent. The Court determined that the waiver came after Acosta read Mercedes her Miranda rights for the third time, Mercedes indicated she understood them, and Mercedes agreed to speak to Acosta without a lawyer present. The District Court's finding that her waiver was made knowingly and intelligently is well-supported by the record. Once Mercedes initiated the conversation regarding her case and voluntarily and knowingly waived her right to counsel, the officers were free to discuss the case with her. Therefore, the incriminating statements Mercedes subsequently made were properly deemed admissible by the District Court.

As a result, we will affirm the District Court's Order.

_____

TO THE CLERK OF COURT:

       Please file the foregoing opinion.

 

_____
Circuit Judge

Dated: