NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 09-3944

UNITED STATES OF AMERICA

v.

DAMION BELL,

Appellant

Appeal from the District Court
for the Virgin Islands
(Crim. No. 1-08-cr-00003-001)
District Judge: Hon. Raymond L. Finch

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 13, 2010

Before: McKEE, Chief Judge,
FUENTES and SMITH, Circuit Judges

OPINION

McKEE, Chief Judge.

Damion Bell appeals the district court's order denying his motion for a new trial.

For the reasons that follow, we will affirm.[1]

I.

We write primarily for the parties and therefore will set forth only the facts

necessary for our discussion.  A routine traffic stop of a car Bell was driving led to the

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

discovery of a loaded 9mm handgun and two clips of ammunition located beneath the driver's seat. Bell was arrested and, according to the testimony of Officer Robin Richards, admitted that he was the owner of the gun and that he did not possess a license for it. Two passengers were also present in the car. Arrifa Perinon, Bell's girlfriend and the owner of the vehicle, was in the passenger seat, and Rashawn Fredericks, Perinon's brother, was in the back seat directly behind Bell.

Bell was ultimately charged with: (1) being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g); (2) possession of ammunition in violation of 18 U.S.C. § 922(g); and (3) unauthorized possession of a firearm in violation of 14 V.I.C. 2253(a). The third offense was dismissed prior to trial. However, the jury convicted him of the remaining federal charges following the court's denial of the motion for judgment of acquittal that Bell made at the conclusion of the government's case.

At trial, the government presented testimony from Perinon and Fredericks. Both witnesses gave testimony that conflicted with earlier statements they had given to police. Fredericks testified that he had not seen Bell with a gun prior to the traffic stop, though his earlier statement to police indicated that he had seen Bell remove the gun from his waistband and place it beneath the seat. Perinon denied having previously been asked by the government whether anyone else had borrowed her car. On direct examination, the government confronted each witness with these prior statements.

Both prior to trial and before submission of the case to the jury, Bell requested a "mere presence" instruction, which in part read:

2

In order to find the Defendant guilty of the crime, the government must prove, beyond a reasonable doubt, that in addition to being present or knowing about the crime, Defendant knowingly and deliberately associated himself with the crime charged in some way as a participant – someone who wanted the crime to be committed – not as a mere spectator.

A338A. The district court denied the request and instead instructed the jury:

These two charges in the Indictment alleged possession. The term to possess means to exercise control or authority over something at a given time. There are several types of possession: Actual possession, constructive possession, sole possession, and joint possession. The possession is considered to be actual when a person knowingly has exercised direct physical control or authority over something. The possession is called constructive when a person does not have direct physical control over something, but can knowingly control it, and intends to control it through some other person.

The possession may be knowingly exercised by one person exclusively, which is called sole possession, or the possession may be knowingly exercised jointly when it is shared by two or more persons.

A370A:20-371A:11.

## II.

On appeal, Bell argues that the district court erred in failing to give the requested "mere presence" instruction, and that the court abused its discretion in allowing the government to recall Richards. We review the district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Weatherly*, 525 F.3d 265, 269 (3d Cir. 2008). The same standard governs our review of the court's decision to allow Richards to be recalled. *United States v. Coward*, 296 F.3d 176, 180 (3d Cir. 2002).

# III. DISCUSSION

A defendant is entitled to a jury instruction if the record supports it. *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999). A new trial is warranted based on a court's refusal to give a requested charge "only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant." *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008) (citing *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006)).

Here, the instruction that the court gave "substantially covered" the requested "mere presence" defense and it is clear that the charge in no way prejudiced Bell.

Bell nevertheless argues that the instruction did not "make clear that Bell's presence and or knowledge of the crime was not sufficient for a finding of guilt." Appellant's Br. at 13. This, according to Bell, could have led the jury to conclude erroneously that if another person in the vehicle possessed the firearm and Bell knew of the crime, then Bell should also be found guilty. We disagree.

The court instructed the jury that in order to find Bell guilty they must find that Bell "knowingly possessed" the firearm and ammunition in question. A369A:9-18, A370A:9-19. The instruction required the jury to find either that Bell "knowingly ha[d] exercised direct physical control or authority over" the firearm and ammunition, or that he could "knowingly control it, and intend[ed] to control it through some other person." A371:1-6. These instructions "clearly indicated that the government must prove that

[Bell] 'knowingly possessed' the firearm in order to find him guilty." *Weatherly*, 525 F.3d at 270. Thus, "the jury necessarily found beyond a reasonable doubt that" Bell knowingly possessed the firearm and ammunition and that he was not a mere spectator. *Hoffecker*, 530 F.3d at 167. Therefore, there was no legal error, and the district court did not abuse its discretion in refusing to give the "mere presence" instruction that Bell requested.

Bell next argues that the district court abused its discretion by allowing the government to reopen its case-in-chief. The decision to reopen is a discretionary matter for the trial court. *Coward*, 296 F.3d at 180. In exercising its discretion, "the district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted." *Id.* at 181 (internal quotations and citations omitted). The court must also consider the timeliness of the request, the character of the testimony, and government's explanation for its failure to present the evidence during its case-in-chief. *Id.* Bell argues that the timing of the request prejudiced him because he had already rested his case and was therefore unable to rebut the evidence. He further argues that the government's explanation was deficient.

It is now clear that the government is entitled to impeach its own witnesses. *See* Fed. R. Evid. 607. Here, the government recalled Officer Richards to rebut the testimony that Fredericks and Perinon offered during direct examination. Fredericks and Perinon originally testified, in sum, that they had no knowledge of Bell's possession of the gun. A242A:4-6; A260A:13-18. Richards testified that statements he obtained from them

5

indicated that "they had knowledge that Damion Bell did have a firearm." A331A:20-21. This was clearly appropriate impeachment testimony that did not improperly prejudice Bell. Although it clearly injured his defense, it did so only because it tended to establish that testimony that Fredericks and Perinon gave that favored the defense was questionable since they had previously given contrary statements. There is nothing improper about the government eliciting such testimony regarding its own witnesses.

Moreover, the government offered a reasonable explanation. The government had attempted to recall Richards during its case-in-chief, A279A:7-9, but defense counsel objected arguing that it was improper to call a rebuttal witness before the defense presented its case. A281A:20-282A:1. The district court agreed and the government agreed to wait to offer the testimony after the defense was finished. A282A:12-20. There is, therefore, a bit of farce in Bell's claim that the government waited too long to call its rebuttal witness.

IV.

For the reasons set forth above, we will affirm the district court's order denying Bell's motion for a new trial.

6