**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 10, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALEJANDRO ESPINOZA,

    Defendant - Appellant.

No. 05-2121
(D.C. No. CR-04-852 )
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Alejandro Espinoza challenges his conviction for

conspiracy to possess with intent to distribute methamphetamine in violation of

21 U.S.C. § 846. After a jury trial, Mr. Espinoza was convicted and sentenced to

240 months imprisonment to be followed by five years supervised release. On

appeal, Mr. Espinoza challenges his conviction on four grounds: (1) the district

court abused its discretion in refusing to reopen the case so that Mr. Espinoza

could present additional evidence, (2) the government violated Mr. Espinoza's

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Fifth Amendment rights by eliciting testimony about his decision to remain silent after arrest, (3) the district court abused its discretion in denying Mr. Espinoza's motion for a mistrial based on certain comments made by the government during an objection, and (4) the cumulative errors made during trial require reversal for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## Background

During December 2003 and January 2004, Grant County, New Mexico deputies set up two controlled methamphetamine purchases from Debra James. Ms. James was arrested and agreed to cooperate with law enforcement. Ms. James told deputies that her supplier was "Miguel Manzo," a man whom deputies later learned was actually Mr. Espinoza. Deputies then recorded a series of telephone conversations between Ms. James and Mr. Espinoza in which the two discussed methamphetamine sales and the proceeds from those sales. Eventually, Ms. James set up a meeting with Mr. Espinoza in order to deliver money to him that she owed from a previous methamphetamine purchase. When Mr. Espinoza arrived to pick up the money, deputies arrested him.

At trial, Ms. James testified that she had purchased methamphetamine from Mr. Espinoza for her personal use beginning in September 2003. Ms. James testified that she eventually allowed Mr. Espinoza to store methamphetamine at her house and that she ultimately began delivering methamphetamine for Mr.

Espinoza. Ms. James testified that she also received money from a street-level methamphetamine distributor named "Johnny," which she deposited into a bank account controlled by Mr. Espinoza. Ms. James testified that Mr. Espinoza supplied her with the methamphetamine that she sold to the deputies.

During the cross-examination of Ms. James, Mr. Espinoza's counsel asked whether Mr. Espinoza drove a 1999 Dodge Durango pickup. The prosecutor objected stating: "Defendant is trying to elicit testimony that should come from the defendant through this witness." Aplt. Br., tab 2, at 177. When the district court asked counsel the point of the question, counsel explained that he sought to show that Mr. Espinoza had sold the truck and had a lot of money from the sale. The prosecutor then reiterated: "Exactly, Your Honor. That is testimony from the defendant, if he chooses to testify, not to testify for the defendant through the testimony of this witness." Id. The district court overruled the government's objection.

The government later called another witness, Drug Enforcement Administration Agent Jacinto Flores. Agent Flores testified that when Mr. Espinoza was arrested, he possessed two driver's licenses–one bearing the name Alejandro Espinoza and another bearing the name Miguel Manzo. Agent Flores also testified that shortly after the arrest, he advised Mr. Espinoza that it would be in his best interest to cooperate. The prosecutor then asked, "And what was his response to that question?" Aplt. Br., tab 3, at 184. Agent Flores answered: "His

response to me was that I sounded like those detectives in the last case he had in California, and he still wound up being screwed. He said he wanted a lawyer this time." Id. Defense counsel did not object at this point.

After the government rested, Mr. Espinoza moved for a mistrial alleging prosecutorial misconduct based on the comments made by the prosecutor following the objection made during Ms. James's cross-examination and also based on Agent Flores's reference to Mr. Espinoza's prior conviction. Mr. Espinoza argued the objection improperly commented on a prior case in which he was involved. The district court denied the motion.

Subsequently, based on representations by defense counsel, the district court announced that Mr. Espinoza had decided not to call any witnesses. The district court's announcement prompted an outburst by Mr. Espinoza: "You're going to give me life without the possibility of parole, and you're not going to allow my side to be heard." Aplt. Br., tab 5, at 217. The district court then excused the jury and reprimanded Mr. Espinoza. The district court then recessed to allow Mr. Espinoza to consult with defense counsel. When court reconvened, defense counsel stated that he may have erred in failing to call Officer Larry Lutonsky as a witness. Defense counsel asked leave to call Officer Lutonsky. In support of this request, defense counsel stated:

> Well, I believe from the Discovery that my client pointed out to me
> today that there was marijuana found in the house when–in Debra
> James' house after it was searched. And I believe this witness is the

- 4 -

witness who took that marijuana into–into evidence; that I believe
Debra James said on the witness stand that there was no marijuana in
the house.

Id. at 225.

The government objected to the motion to reopen, describing Mr. Espinoza's outburst as "tactical" because even if Mr. Espinoza felt he could not voice his objections through counsel, he could have leveled his complaint well before the jury entered the courtroom. Id. The government also noted that ample discovery had been provided to counsel. The district court denied the motion to reopen, stating that extending the trial would disrupt its calendar. The district court also suggested that Officer Lutonsky's testimony would only have limited impeachment value. The district court also agreed that Mr. Espinoza's outburst appeared to be calculated.

During closing rebuttal, the prosecutor remarked:

There is absolutely no evidence, whatsoever, that the [defendant] or Debra James was dealing in marijuana or cocaine. As a matter of fact, the only time those words were ever uttered in this trial came out of the mouth of Mr. Wright [defense counsel], and nobody else. And you are warned–I mean, instructed what the lawyers say, including myself, is not testimony, it's just argument and shouldn't be considered to [sic] you as fact.

II R. Supp. at 31.

Following the government's rebuttal, the district court instructed the jury that "[t]he law does not require the defendant to prove his innocence or produce any evidence at all, and no inference, whatever, may be drawn from the election

of the defendant not to testify." Id. at 7. The district court further instructed: "I have ordered stricken from the record the testimony of Agent Flores regarding the conversation he had with the defendant, after the defendant's arrest, about the defendant's prior involvement with the authorities in California. Don't consider any testimony or other evidence which has been stricken in reaching your decision." Id. at 4.

Mr. Espinoza was subsequently convicted.

Discussion

I.    The Motion to Reopen

We review the denial of a motion to reopen the evidence for abuse of discretion. Morsey v. Chevron USA, Inc., 94 F.3d 1470, 1477 (10th Cir. 1996). A district court abuses its discretion only if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Atencio, 435 F.3d 1222, 1236 (10th Cir. 2006). Even if a district court abuses its discretion, we will not reverse if the error is harmless. United States v. Turner, 285 F.3d 909, 914 (10th Cir. 2002).

As we noted in United States v. Montgomery, 620 F.2d 753, 757 (10th Cir. 1980), the "trial court has some interest in seeing that justice is done and in seeing that all the facts are presented." Against this backdrop, we find instructive those factors the Third Circuit has relied upon in deciding whether a

district court abuses its discretion in denying a motion to reopen the evidence. United States v. Coward, 296 F.3d 176 (3d Cir. 2002). In Coward, the court considered the following factors: (1) the timeliness of the motion, (2) the character of the testimony, (3) the effect of granting the motion, (4) the reasonableness of the excuse for failing to present the evidence prior to resting, and (5) whether belated receipt of the evidence would mark it with distorted importance, prejudice the other party's case, or preclude the other party from adequately addressing it. Id. at 181. Application of these factors in the instant case demonstrates that the district court did not abuse its discretion.

First, although the motion was made shortly after the district court announced that the defense had concluded its case, the timing of the motion was suspect because Mr. Espinoza was present in court when his counsel informed the court that he did not expect to call any witnesses. Aplt. Br., tab 4, at 189. Thus, Mr. Espinoza could not have been totally surprised when his counsel rested the following day without calling any witnesses.

Second, the character of the testimony to be offered by Officer Lutonsky at best was cumulative, as well as collateral, impeachment evidence, which would ordinarily be inadmissible under Fed. R. Evid. 608(b). At trial, Mr. Espinoza's counsel stated that the purpose of Officer Lutonsky's testimony was to impeach Ms. James, who had testified that no marijuana had been found when the police searched her house. Aplt. Br., tab 5, at 224, III R. at 164. While Mr. Espinoza's

appellate counsel argues that Officer Lutonsky's testimony was "substantive" and supported Mr. Espinoza's theory that he only supplied Ms. James with marijuana and not methamphetamine, this purpose was not advanced before the trial court. Mr. Espinoza's counsel tried to develop such a theory in the cross-examination of Ms. James but was unable to do so. III R. at 162, 178-79.

Mr. Espinoza's trial counsel extensively cross-examined and impeached Ms. James on numerous points. These included: (1) that she stood to receive significant benefits from her cooperation with the government, (2) that she had admitted prior marijuana and methamphetamine use, (3) that she had multiple suppliers of methamphetamine, albeit for personal use, (4) that she was terminated by her employer for violating company policies, and (5) that she failed to inform the police about methamphetamine later found in her home. Allowing Officer Lutonsky to testify would have simply added another point of impeachment among many.

Third, reopening the trial would have delayed the proceedings and disrupted the district court's already busy calendar. Mr. Espinoza requested a weekend continuance so he could locate Officer Lutonsky. This would have delayed closing arguments and jury instruction from Friday, January 21, 2005 to Monday, January 24, 2005. It would have also disrupted another trial the district court was set to begin the following week.

Fourth, it appears that trial counsel was aware of the nature of Officer

Lutonsky's probable testimony given discovery prior to trial. Aplt. Br., tab 5, at 225. Thus, it appears that defense counsel made a reasonable tactical choice to forego this evidence until his client suggested otherwise at the close of the trial. Such a deliberate choice is not a sufficient excuse for failing to offer testimony prior to the close of evidence.

Finally, we do not think that the late receipt of this evidence would have prejudiced the government or prevented the government from addressing it, or that the jury would have placed undue importance on it.

Because most factors militate against reopening the evidence, we conclude that the district court did not abuse its discretion. Our conclusion in this case does not mean, however, that district courts should view motions to reopen with skepticism. To the contrary, when the burden is not significant, and assuming the admissibility of the proposed evidence, prudence suggests that district courts should lean towards granting motions to reopen so that the parties have a full opportunity to be heard.

II.    The Testimony About Mr. Espinoza's Right to Remain Silent

Mr. Espinoza argues that the government violated his Fifth Amendment rights when Agent Flores testified about Mr. Espinoza's decision to remain silent immediately after his arrest. We generally apply harmless error review when the government improperly references a defendant's decision to exercise his Fifth Amendment rights. See United States v. Lauder, 409 F.3d 1254, 1261 (10th Cir.

2005). However, when a defendant fails to offer a contemporaneous objection to such an impermissible comment, we review for plain error. United States v. Toro-Pelaez, 107 F.3d 819, 826-27 (10th Cir. 1997). Under the plain error standard, a defendant must show: (1) that the district court committed error, (2) that the error was plain, (3) that the error affected his substantial rights, and (4) that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Gonzales-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). To show that an error affected substantial rights, a defendant must typically demonstrate that the outcome of the proceedings was affected. Id.

In this case, Mr. Espinoza failed to object to Agent Flores's testimony on the basis that the testimony violated his Fifth Amendment rights, so our review is for plain error. The government concedes that the first two prongs of the plain error standard are met because, under established law, "once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised." Lauder, 409 F.3d at 1261. The government strenuously argues, however, that Mr. Espinoza cannot show that Agent Flores's statement affected his substantial rights.

In determining whether an error affects substantial rights, we apply the same factors considered in harmless error analysis, except that the burden falls to the defendant. See United States v. Olano, 507 U.S. 725, 734 (1993). Thus, we

must consider:

> (1) the use to which the prosecution puts the silence, (2) who elected to pursue the line of questioning, (3) the quantum of other evidence indicative of guilt, (4) the intensity and frequency of the reference, and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

Lauder, 409 F.3d at 1261.

As to the first factor, it is not clear that the government put Agent Flores's statement to much use at all. Agent Flores was called principally to testify regarding Mr. Espinoza's use of the alias "Miguel Manzo" and his possession of two different driver's licenses. This testimony was important to the government's case because Ms. James said she knew Mr. Espinoza as "Miguel Manzo." While counsel for the government did ask the question that prompted Agent Flores's testimony regarding Mr. Espinoza's decision to remain silent, it does not appear that the government tried to use the testimony as substantive evidence of guilt.

Furthermore, we are convinced from our review of the briefs and record, that a significant quantity of other evidence indicated Mr. Espinoza's guilt, including the testimony of Ms. James, recorded phone conversations between Mr. Espinoza and Ms. James, bank records of cash deposits into Mr. Espinoza's bank account, and the fact that Mr. Espinoza was arrested at a prearranged meeting to collect a drug debt. This evidence, without the implication created by Agent Flores's testimony, was more than enough for a reasonable jury to convict Mr.

- 11 -

Espinoza and surely dictated the outcome of the case.

Additionally, the reference to Mr. Espinoza's choice to remain silent was a singular incident which was not repeated nor subsequently commented upon by the prosecution. And, the district court struck this portion of Agent Flores's testimony from the record sua sponte, ordering the jury to disregard it. We presume the jury followed this instruction. See United States v. Cherry, 433 F.3d 698, 702 (10th Cir. 2005). For these various reasons, we conclude that Mr. Espinoza has failed to show Agent Flores's testimony affected his substantial rights. Accordingly, Mr. Espinoza has failed to satisfy the plain error standard.

III.    The Motion for Mistrial

We review the district court's denial of Mr. Espinoza's motion for a mistrial based on prosecutorial misconduct for abuse of discretion. United States v. Caballero, 277 F.3d 1235, 1242 (10th Cir. 2002). A district court "may appropriately grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired . . . ." Id.[1] We affirm the district court because we find there was no prosecutorial misconduct.

---

[1] Mr. Espinoza argues that our review should be de novo because the district court denied the motion for a mistrial because of an error of law—namely that it mischaracterized defense counsel's failure to object as invited error. Aplt. Br. at 32. Based on the record, it appears the district court rejected the motion for mistrial because the government engaged in no misconduct. Aplt. Br., tab 5, at 204-05. Regardless, because we conclude there was no misconduct on the part of the government, we would affirm under either standard of review.

Mr. Espinoza argues that counsel for the government engaged in misconduct because, during an objection, he "said essentially that counsel was attempting to obtain testimony from the witness that should come from the defendant," and that "[t]his was a comment on Mr. Espinoza's right not to testify [that] violated his Fifth Amendment rights." Aplt. Br. at 30. In determining whether a prosecutor's remarks are in fact a comment on a defendant's right not to testify, we ask "whether the language used by the prosecution was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Nelson, 450 F.3d 1201, 1213 (10th Cir. 2006). "[M]anifest intent will not be found if some other explanation for the prosecutor's remark is equally plausible." Id. Additionally, "[t]he question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so." Id.

In this case, there is no evidence that the prosecutor "manifestly intended" to comment on Mr. Espinoza's failure to testify. The prosecutor's remarks came during a colorable objection to questions posed by defense counsel. It is quite plausible, if not probable, that the prosecutor made the comments because he was objecting to a perceived attempt by defense counsel to introduce impermissible hearsay evidence. Indeed, although it overruled the prosecutor's objection, the district court ordered Ms. James to answer only those questions to which she

possessed personal knowledge. This isolated statement made during an objection simply is not misconduct.[2]

IV.  The Cumulative Effect of the "Errors"

Mr. Espinoza also argues that there is cumulative error requiring reversal. Cumulative error analysis "aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Apperson, 441 F.3d 1162, 1210 (10th Cir. 2006). Given that we have found only one error in this case (Agent Flores's testimony about Mr. Espinoza's decision to remain silent) we will not reverse on grounds of cumulative error. See Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003) (noting that cumulative error analysis requires at least two errors).

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[2] Even if the prosecutor's comments were misconduct, they did not affect the fairness of the proceedings. The district court gave an adequate instruction on Mr. Espinoza's right to remain silent, the remarks were extremely limited, and they played little role in the case as a whole. See United States v. Gabaldon, 91 F.3d 91, 95 (10th Cir. 1996).