**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

ROBERT LEE NICK,

　　Defendant-Appellant.

No. 09-2077
(D.C. No. 1:08-CR-00052-MCA-1)
(D.N.M.)

**ORDER AND JUDGMENT***

Before **KELLY**, **BALDOCK**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Robert Lee Nick was convicted after a jury trial of possession with intent to distribute more than 100 kilograms of marijuana. After the government's closing argument, Mr. Nick sought to reopen the evidence due to the discovery of a second key to the padlock that secured the trailer in which the marijuana was discovered. However, the district court suggested that the matter could be better addressed in the post-trial motion context and did not allow Mr. Nick to present evidence of the discovery of the second key. After the jury

---

　　*　　This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

rendered its guilty verdict, Mr. Nick filed a motion for new trial relating to the discovery of the second key, which the district court denied. He then filed a motion for reconsideration, which the district court also denied.

Mr. Nick now argues on appeal that the district court committed two errors: (1) the district court abused its discretion in denying his motion to reopen when he wanted to present the evidence concerning the second key, and (2) the district court abused its discretion in denying his motion for a new trial due to the discovery of the second key. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and **AFFIRM**.

## BACKGROUND

A grand jury returned a two-count indictment against Mr. Nick and a co-defendant—his brother, Percy Nick.[1] The indictment charged them with conspiring to possess with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B), and possessing with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

At trial, the government presented evidence that Mr. Nick—accompanied by his nephew, Christopher Patrick, and his brother, Percy—was hauling a load of celery from California to Michigan when a safety inspection at the port of entry in

---

[1]     Mr. Nick filed an unopposed motion to sever his trial from that of his brother due to Percy Nick's status as a fugitive, and the district court granted the motion.

Gallup, New Mexico, revealed approximately 550 pounds of marijuana hidden in boxes at the front of Mr. Nick's trailer.

More specifically, the evidence revealed the following: A transportation inspector for the New Mexico Department of Safety testified that discrepancies in the logbook, and between the logbook and the bill of lading, caused her to refer the matter to a police officer who served as a commercial vehicle inspector. This police officer also examined the logbook, bill of lading, and driver's license provided by Mr. Nick—all of which were in the name of a "Ricky Bunn"[2]—and upon discovering additional discrepancies, decided to perform a level-2 inspection, which entails walking around the truck and trailer; examining the equipment, logbook, and bill of lading; and checking for cargo and load securement. When the officer asked Mr. Nick to open the trailer for cargo inspection, Mr. Nick removed the key from the ignition of the truck and opened the padlock that secured the trailer door with another key on that key ring. During this inspection, the officer observed that the trailer contained a load of celery, but he also noted that the load's boxes had crush marks which he believed indicated that someone had crawled on top of the load. The officer also observed two "sliders," which he testified are frequently used by drug couriers to slide contraband to a location in the trailer behind the legitimate load. As a result of

---

[2] The photo on the driver's license was of Mr. Nick. The officer discovered a week later that the driver was actually Mr. Nick, not Mr. Bunn.

- 3 -

these observations, the officer entered the trailer, whereupon he discovered a series of brown boxes in front of the load of celery which contained black trash bags filled with marijuana. At this point, the officer arrested Mr. Nick and his two passengers.

The defense presented two witnesses: Mr. Patrick, Mr. Nick's nephew and one of the passengers on the day of Mr. Nick's arrest, and Yvette Santifer, Mr. Nick's business partner and estranged wife. Mr. Patrick testified that he was learning how to drive a large rig from his uncle, and that he had traveled with Mr. Nick from Mississippi to Waco, Texas, to deliver a load of juice and to pick up a load of chicken, which they then delivered to a place near Los Angeles. He explained that one of the company's other trucks had broken down, and he and Mr. Nick tried to help repair it. Then, due to the mechanical problems of the other truck and unavailability of other drivers, dispatch—that is, Ms. Santifer—told Mr. Nick to pick up the load of celery.

Mr. Patrick testified that he was with Mr. Nick when the celery was loaded, and he observed Mr. Nick seal the trailer with the padlock. The two men then drove the truck to Compton, California, where they left it for approximately nineteen hours while dispatch looked for another driver. Eventually, Mr. Nick had to deliver the celery load himself due to its perishable nature. Mr. Patrick testified that all of the drivers had keys to all the trucks "so . . . every time they feel they needed a load in a specific truck, they could jump in one and go." R.,

- 4 -

Vol. III, at 342. However, he did not know whether the other drivers, or anyone else, had keys to the padlock on this particular truck.

Ms. Santifer testified that she was the dispatcher for and part-owner of Nick's Trucking with Mr. Nick, from whom she was separated. Nick's Trucking used four drivers who were each independent contractors—one of whom was Mr. Bunn. While Mr. Nick was part-owner of Nick's Trucking, he was not an authorized driver. Despite this fact, she explained that when emergency situations came up, Mr. Nick would nonetheless drive loads using a fake trucker's license in Mr. Bunn's name.

A few days before Mr. Nick's arrest, Ms. Santifer arranged for Nick's Trucking to haul a load of celery from California to Michigan. However, due to mechanical difficulties with one of the company's trucks and her inability to find alternate drivers, she told Mr. Nick he would have to pick up the load of celery. She explained that after he picked up the load, she kept looking for another driver, but eventually pressed Mr. Nick to deliver it himself.

Ms. Santifer testified that she believed there were multiple keys to the padlock that secured the trailer Mr. Nick was hauling when he was arrested. She explained that she tried to ensure each driver had keys that would operate the locks on each other's vehicles so they could swap equipment more easily when necessary. Acknowledging that both the government and Mr. Nick had asked her before trial to produce any duplicate keys to the padlock, she stated that she did

not know which lock was the one for Mr. Nick's trailer, or what the key that fit that lock looked like. She further explained that her son had located more trailer keys that might fit the padlock and he was sending them to her via overnight mail.

After Ms. Santifer completed her testimony, the jury was excused for the day because Mr. Nick wanted time to decide if he would testify in his defense. The next morning, Mr. Nick declined to testify and the defense rested. The government then made its closing argument, emphasizing that there was only one key to the padlock securing the trailer and that Mr. Nick was the individual who had it.[3] During the recess between the parties' closing arguments, Mr. Nick's attorney informed the court that his office had received a FedEx package that morning and the package contained four keys, one of which opened the padlock. At this point, Mr. Nick's counsel requested that the court allow him to demonstrate during his closing that this new key fit the padlock and moved to

---

[3] The government mentioned that Mr. Nick had the only key to the padlock on five different occasions during its closing argument. For example, the government explained that Mr. Nick

> walked to the back of the trailer after taking the keys out of the ignition with the only—the only key to this lock . . . the only key to this lock in this trial. That's it. The evidence has shown that for the purposes of this trial, the only key that exists for this lock is the key that the defendant possessed.

R., Vol. III, at 409. The government also explained: "That's what this case is about . . . [,] this stuff right here, the bulk marijuana, 550 pounds of it that was stuffed in the front of the defendant's trailer to which only he had the key . . . ." *Id*. at 411.

reopen the evidence.  The government objected to this possible demonstration and also objected to Mr. Nick's motion to reopen.  The district court did not let Mr. Nick present this evidence and reminded the defense that it would entertain a motion for a new trial based on newly discovered evidence if the jury convicted Mr. Nick.  Mr. Nick's counsel explicitly agreed to this course of action, stating: "perhaps the best way to handle [the situation was] to let the jury go ahead and render its verdict and determine from that what post-trial motions may be in order."  R., Vol. III, at 434.

The trial continued—the defense gave its closing, the government its rebuttal, and the jury began to deliberate.  After responding to a note from the jury, the district court explained that while it had the parties together, it wanted to "make a record as to the reasons why [it] denied the defendant's motion to reopen the evidence in this case" and proceeded to give a more detailed explanation for its denial.  R., Supp. Vol. I, at 43.

Ultimately, the jury found Mr. Nick guilty on the possession count, but acquitted him on the conspiracy count.  Within seven days of the jury's verdict, Mr. Nick moved for a new trial, citing both the "the interest of justice" standard and the newly discovered evidence standard, based upon the discovery of the second key.  The district court denied this motion, and denied Mr. Nick's motion for reconsideration, which did not argue that the district court had applied the

wrong legal standard in evaluating his motion for a new trial.  Subsequently, Mr. Nick was sentenced by the district court.  He then filed a timely notice of appeal.

## DISCUSSION

Mr. Nick raises two challenges to his conviction: (1) the district court erred in denying his motion to reopen, and (2) the district court erred in denying his motion for new trial and his reconsideration motion on this issue.  We address each challenge in turn.

### I.    Motion to Reopen

We generally review the denial of a motion to reopen the evidence for an abuse of discretion.  *Morsey v. Chevron USA, Inc.*, 94 F.3d 1470, 1477 (10th Cir. 1996); *see also United States v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980) ("Certainly the trial court has discretion to determine whether to reopen a case, and ordinarily a decision to reopen will not be reversed on review without a clear showing of abuse of discretion.").  A district court abuses its discretion if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable."  *United States v. Doe*, 572 F.3d 1162, 1172 (10th Cir. 2009) (quoting *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1391 (2009)) (internal quotation marks omitted), *cert. denied*, 130 S. Ct. 1687 (2010).  "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in

the circumstances." *Fed. Deposit Ins. Corp. v. Rocket Oil Co.*, 865 F.2d 1158, 1160 n.1 (10th Cir. 1989) (per curiam). Elaborating on that standard, we have stated: "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (citation omitted).

### A. Timing of Denial

On appeal, Mr. Nick argues that the district court's denial of the motion to reopen the evidence "should not be deferentially reviewed because the district court declined to exercise its discretion when the motion was made and denied it much later—after the parties had concluded their closing arguments and the jury had deliberated for several hours." Aplt. Opening Br. at 22. He stresses that the district court erred by delaying its decision on whether to grant his motion to reopen the evidence. He contends that this delay—which permitted the closing arguments to conclude and the jury to commence deliberations—effectively dictated the district court's ultimate denial of his motion to reopen. In response, the government argues that Mr. Nick has waived the issue by acquiescing to the district court's suggestion that the issue would be better addressed, if necessary, in a motion for new trial.

- 9 -

Even if Mr. Nick is correct that the district court delayed its decision on the motion to reopen,[4] we agree with the government that Mr. Nick has waived any argument concerning any potential prejudice that the delayed timing of the district court's ruling may have caused him. "'Waiver is the intentional relinquishment or abandonment of a known right,' whereas 'forfeiture is the failure to make the

---

[4] The government contends that the district court "did not *explicitly* rule on the motion at all." Aplee. Br. at 26 (emphasis added). However, we note that the record at least strongly suggests that the district court believed it had denied Mr. Nick's motion in the first instance.

Reviewing the record, it seems apparent that the district court believed it had denied the motion when Mr. Nick first raised it. The district court discussed the motion to reopen twice on the record. First, the district court stated:

> Given the precise circumstance that is before us here, what I suggest, Counsel, would be most appropriate is that we let the jury continue to hear the closing arguments. . . . And the Court—if there is a conviction on one or more counts, then the Court would certainly entertain any further motions post-trial, for example, a motion for new trial based on newly discovered evidence.

R., Vol. III, at 433. By expressly suggesting a better avenue—*viz.*, a motion for new trial—arguably, the district court tacitly and effectively denied Mr. Nick's motion to reopen. This view is supported by the second time the district court addressed the motion. After discussing how best to handle a question from the jury, the district court also made a record "as to the reasons why [it] denied the defendant's motion to reopen the evidence in this case, that motion having been made after the government completed its first part of closing argument and before the defendant began [his] closing argument." R., Supp. Vol. I, at 43; *see id.* at 43–47 (detailing reasoning for earlier denial of the motion). This description of the sequence of events strongly suggests that the district court understood itself to be denying the motion to reopen when it first was presented; it stated as much the second time it addressed the issue, when the court gave its reasons for the earlier denial of the motion.

timely assertion of a right.'" *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). We have explained repeatedly that "waiver is accomplished by intent, [but] forfeiture comes about through neglect." *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) (alteration in original) (quoting *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007)) (internal quotation marks omitted), *cert. denied*, 129 S. Ct. 2034 (2009); *accord Cruz-Rodriguez*, 570 F.3d at 1183. "Waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it." *Cruz-Rodriguez*, 570 F.3d at 1183. "As for the availability of appellate review, we have held that 'a party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is *not* entitled to appellate relief.'" *Id.* (quoting *Carrasco-Salazar*, 494 F.3d at 1272).

Here, Mr. Nick waived the issue of the timing of the consideration of his motion. Not only did he fail to object to the district court's suggested approach, he explicitly agreed to it and acquiesced to any delay by answering affirmatively the district court's question: "And you agree that perhaps the best way to handle this is let the jury go ahead and render its verdict and determine from that what post-trial motions may be in order, if any?" R., Vol. III, at 434. Therefore, Mr. Nick is not entitled to appellate review of his contention that the district court

- 11 -

erred by delaying its consideration of his motion to reopen the evidence until it was too late.

### B.    Merits of Denial

Mr. Nick also argues that the district court abused its discretion in denying his motion to reopen because the court did not provide an adequate explanation and, more specifically, did not mention the factors that weighed in Mr. Nick's favor.[5] We conclude, however, that the district court did not abuse its discretion. After reciting the factors outlined in *United States v. Coward*, 296 F.3d 176, 181 (3d Cir. 2002), which we cited in *United States v. Espinoza*, 211 F. App'x 795

---

[5]      Mr. Nick now asserts for the first time on appeal that the district court "did not examine ways in which the evidence of the newly received key could [have been] fairly presented." Aplt. Opening Br. at 28. At most, Mr. Nick's challenge to the district court's action (or lack thereof) as to these alternative ways—re-calling Ms. Santifer to testify, granting additional time to the government for closing argument, or issuing a jury instruction not to give the key undue weight based on its belated admission—is entitled to plain error review. *See United States v. Steele*, 603 F.3d 803, 808 (10th Cir. 2010); *United States v. Bedford*, 536 F.3d 1148, 1153 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1359 (2009).

To establish plain error, Mr. Nick "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hasan*, 609 F.3d 1121, 1133 (10th Cir. 2010) (quoting *United States v. Goode*, 482 F.3d 676, 681 (10th Cir. 2007)) (internal quotation marks omitted). Most significantly, Mr. Nick has made no argument that the district court's purported error in failing to consider alternatives of the type advanced by Mr. Nick affected his substantial rights or seriously affected the fairness, integrity, or public reputation of the judiciary. Thus, the district court did not plainly err.

(10th Cir. 2007), the district court explained its reasoning in denying the motion to reopen. The court found that the motion was untimely because it was made after both parties had rested, the court had instructed the jury, and the government had made its closing argument. The district court also questioned the reliability of the evidence and noted that the prosecutor would have had no opportunity to cross-examine anyone about the key if the court had allowed Mr. Nick's attorney to demonstrate that the second key fit the padlock during his closing. The district court also explained that reopening the evidence would delay the trial "by an additional day, if not days," due to the government's expressed desire to conduct further investigation into the origins of the key, and that such a delay could not be accommodated by the court's or the jury's schedules. The district court found that Mr. Nick had not demonstrated a reasonable excuse for failing to present the evidence in his case prior to resting, despite the fact that the government had identified the lock in question and its significance well in advance of trial. Additionally, the court noted that the key had apparently been in the possession of a defense witness the whole time. Finally, the court found that the belated introduction of the key into evidence would distort unduly its importance.

In deciding whether a district court abused its discretion in denying a motion to reopen the evidence, we consider the same factors the district court considered when it made its decision: (1) "the timeliness of the motion"; (2) "the character" of the evidence, including whether it is "relevant, admissible,

technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused"; (3) "the effect of the granting of the motion"; (4) whether "[t]he party moving to reopen" has "provid[ed] a reasonable explanation for fail[ing] to present the evidence in its case-in-chief"; and (5) whether "[t]he belated receipt" of the evidence would "imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered." *Coward*, 296 F.3d at 181 (quoting *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985)) (internal quotation marks omitted); *see Espinoza*, 211 Fed. App'x at 799.

The district court gave both sides an opportunity to present arguments concerning the motion to reopen. The government argued that it "would be deprived of its right to cross-examine a witness about the authentication of the exhibit," and pointed out that allowing the admission of the key at that time, given the focus of its closing, would deprive the government of a fair trial. R., Vol. III, at 432. The government further argued that it would be inclined to "dispatch an agent to California to investigate" who had sent the key, "to interview witnesses, to find out where this key came from, [and] to find out why it came so late." *Id.* In contrast, Mr. Nick's attorney admitted that he had no authority for his argument and that "the only argument I have is that the Court would be depriving me of my Johnny [sic] Cochran, if the key fits, you must acquit." *Id.* at 433.

- 14 -

Mr. Nick now argues that the district court abused its discretion by failing to consider any factors that favored granting the motion. However, Mr. Nick's efforts are unpersuasive. Mr. Nick argues that his motion was timely because the additional key was presented as soon he discovered that it fit the padlock. However, this argument fails to take into account that the government had already presented its closing argument which repeatedly emphasized the absence of any direct proof of additional keys.

As to the second factor, Mr. Nick argues that the evidence "would clearly have been admissible, important, and helpful to the jury." Aplt. Opening Br. at 35–41. While Mr. Nick is correct that re-calling Ms. Santifer to testify as to the origins of the key could have addressed some of the concerns of the government and the court regarding the admissibility of the key, re-calling Ms. Santifer would not have resolved those concerns completely. Counsel for Mr. Nick admitted Ms. Santifer had not actually received the key; rather, an investigator with the public defender's office picked up the package from Ms. Santifer's hotel and brought it to the court. Therefore, Ms. Santifer's testimony could shed no light on how the key surfaced in the first instance. In addition, Ms. Santifer's testimony would not necessarily have reached the concerns that the government raised initially as to the key's foundation, such as who had found the key prior to apparently transmitting it to Ms. Santifer, where it had been found, when and where the key was made, and the reasons for the extreme delay in producing it.

Mr. Nick also argues that the third factor—the effect of granting the motion—weighs in his favor because Ms. Santifer was still in town and available to testify, and that the court's conclusion that the delay would be a day, if not multiple days, was unfounded. However, this argument fails to take into account the government's expressed desire to send someone to California to investigate the origins of the key. The court was correct in deciding based upon the information it had at that time that granting the motion could result in a significant delay.

As to the fourth factor, the district court did not abuse its discretion in determining that Mr. Nick had not provided a reasonable explanation as to the delay in presenting the evidence. In fact, Mr. Nick presented no explanation. The district court was correct when it stated that Mr. Nick had known of the importance of the evidence for a long time and that the evidence was apparently in the possession of a defense witness that entire time. Thus, this factor weighs against granting Mr. Nick's motion to reopen.

Finally, the district court did not abuse its discretion in determining that the disclosure of the key at that belated time would prejudice the government's case and preclude the government from adequately addressing it. The government needed several additional days to investigate the circumstances of the appearance of the key. If the district court had allowed the key to be received into evidence without such an investigation, the government could not have adequately

addressed the new evidence. Therefore, because the district court's decision to deny the motion to reopen was not arbitrary, capricious, whimsical, or manifestly unreasonable, the court did not abuse its discretion.

## II. Motion for New Trial

We review the denial of a motion for new trial for an abuse of discretion. *United States v. Poole*, 545 F.3d 916, 918 (10th Cir. 2008). As discussed *supra*, a district court only abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable. *Doe*, 572 F.3d at 1172. And if a district court commits a legal error by applying the wrong legal standard, such an error ordinarily will be tantamount to an abuse of discretion. *See, e.g.*, *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1213 (10th Cir. 2010) (citing *Davis*, 302 F.3d at 1111).

Mr. Nick asserts that the district court committed a legal error in denying his motion for new trial, and thus abused its discretion, when it analyzed the motion only under the stringent standard applied to newly discovered evidence and ignored the interest-of-justice rubric.[6] He contends that the district court

---

[6] Federal Rule of Criminal Procedure 33 allows a district court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, in considering whether to grant a motion for new trial based on newly discovered evidence the defendant must show:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence was not merely impeaching; (4) the new
>
> (continued...)

- 17 -

erred by applying the more stringent factors in *Sinclair*, *supra*, because he made

his motion within seven days of the verdict and his motion was not based on

newly discovered evidence.[7]  He argues, instead, that the district court should

have considered "the interest of justice" alone in deciding whether to grant or

deny his motion.

Mr. Nick points to *United States v. Scroggins*, 379 F.3d 233, 253–54 (5th

Cir. 2004), *judgment vacated on other grounds*, 543 U.S. 1112 (2005), to support

this contention.  In *Scroggins*, the defendant did not expressly base his motion on

newly discovered evidence though he did mention the standard briefly.  379 F.3d

---

[6](...continued)
>       evidence is material to the principal issues involved; and (5) the
>       new evidence is of such a nature that in a new trial it would
>       probably produce an acquittal.

*United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997) (quoting *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992)) (internal quotation marks omitted).  A motion based only on newly discovered evidence must be filed within three years of the verdict, while a motion based on any other ground must be filed within seven days.  Fed. R. Crim. P. 33(b).  The 2009 Amendments (effective December 1, 2009) extended the other-grounds deadline to fourteen days.

[7]      Mr. Nick also argues that the district court erred by speculating that Mr. Nick had an improper motive for seeking to reopen the evidence—specifically, that Mr. Nick purportedly sought to sanitize the evidence offered by Ms. Santifer who had credibility problems.  In its order denying Mr. Nick's motion for reconsideration, however, the district court accepted the defendant's proffer as to his motivation and the timing of the request.  Therefore, the district court's second order makes clear that the district court was not basing its decision to deny the motion for new trial on a possibly improper motive by the defense.  As a result, the district court did not abuse its discretion in speculating on a possibly improper motive by the defense.

at 238, 254 & n.42.  The Fifth Circuit held that "[a] district court may grant a new trial where it finds that a miscarriage of justice may have occurred at trial."  *Id.* at 255 (internal quotation marks omitted).  The Fifth Circuit went on to explain that "[a] miscarriage of justice warranting a new trial in certain circumstances may occur even when there has been no specific legal error."  *Id.*  Based upon the district court's consideration of the *Sinclair* factors rather than the interest-of-justice rubric, the Fifth Circuit remanded the case to the district court to consider whether Mr. Scroggins's motion should be granted in the interest of justice.  *Id.* at 256.

Yet, a strong argument could be made that Mr. Nick has waived his challenge to the district court's disposition of his motion for new trial, insofar as the argument is based on the court's alleged application of the wrong legal standard.[8]  We need not reach a definitive conclusion on this waiver issue,

---

[8]     We have explained repeatedly that the invited error doctrine "prevents a party who induces an erroneous ruling from being able to have it set aside on appeal."  *United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005) (quoting *United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991)) (internal quotation marks omitted).  "Our invited error doctrine prevents a defendant or counsel from lying in wait for potential mistakes, and then seeking to reverse the outcome of trial."  *United States v. Oldbear*, 568 F.3d 814, 826 (10th Cir.), *cert. denied*, 130 S. Ct. 263 (2009).  As we have noted:

> [T]he doctrine of invited error "is based on reliance interests similar to those that support the doctrines of equitable and promissory estoppel.  Having induced the court to rely on a particular erroneous proposition of law or fact, a party . . . may not at a later stage . . . use the error to set aside the immediate

(continued...)

however.  Even if we were to conclude that Mr. Nick had not waived this argument, the outcome of this case would be the same.

On the merits, as the government suggests, Mr. Nick's contention of error rests on slim legal foundation—that is, it rests almost entirely on the Fifth Circuit's decision in *Scroggins*, which of course does not bind us.  More importantly, we conclude that any error Mr. Nick might establish concerning the district court's choice of legal standard was harmless.  Although the government appears not to have argued harmless error in connection with the district court's resolution of the motion for new trial (as it did with respect to the court's

---

[8](...continued)
        consequences of the error."

*DeBerry*, 430 F.3d at 1302 (quoting *Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 249 (6th Cir. 1991)).  Invited error is a form of intentional relinquishment of a known right—that is, a form of waiver.  And when an issue is waived, it is not subject to review on appeal.  *See Carrasco-Salazar*, 494 F.3d at 1272; *see also United States v. Teague*, 443 F.3d 1310, 1314–15 (10th Cir. 2006) (holding that invited error is a form of waiver, which will we not review even for plain error).  We may consider an issue of waiver *sua sponte*.  *See United States v. Mancera-Perez*, 505 F.3d 1054, 1057 n.3 (10th Cir. 2007).

In his motion for new trial, Mr. Nick made arguments under *both* the interest of justice standard and the newly discovered evidence standard of *Sinclair*.  The district court primarily chose to analyze his motion under the *Sinclair* factors for newly discovered evidence, and Mr. Nick did not object to this choice in his motion for reconsideration.  In other words, Mr. Nick provided the district court with the legal standard it used; thus, a strong argument could be made that he invited any error related to the district court's choice of this legal standard.  As noted, we need not definitively resolve the waiver issue, however.  Even if Mr. Nick did not waive his challenge to the district court's choice of legal standard, as detailed *infra*, the court's ruling on his motion for new trial should not be disturbed.

disposition of the motion to reopen), on this record, "the certainty of the harmlessness is readily apparent." *United States v. Holly*, 488 F.3d 1298, 1308 (10th Cir. 2007).

In particular, Mr. Nick failed to show that the second key would be admissible. While he asserts that Ms. Santifer was still available and could have been recalled to testify about the key, she was not the person who found it, so she could not explain where it was found, who found it, and where it had been for all of the time leading up to the trial. In addition, she was not even the person who brought it to the courthouse. Therefore, she could not provide an adequate foundation concerning the origins of the key to permit its admission into evidence. In sum, even if the court erred in selecting the controlling legal standard to adjudicate Mr. Nick's motion for a new trial, the second key would not have been admissible and thus any such error was harmless.

Furthermore, although the second key's inadmissibility is determinative in itself, we note that the district court quite reasonably concluded that the key was not central to the government's case and its admission would not have been material—*viz.*, its admission would not have affected the outcome of the trial. Both defense witnesses, Mr. Patrick and Ms. Santifer, testified about the possibility of a second key's existence; therefore, this information was before the jury and it was free to draw exculpatory inferences from it. Moreover, the district court provided several specific reasons why the key was merely impeaching,

rather than compelling, evidence, and why the key was peripheral to the central focus of the case. In sum, irrespective of any error by the district court in the choice of a legal standard, we conclude that the district court's order denying Mr. Nick's motion for new trial should not be disturbed.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Mr. Nick's conviction**.**


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge