**UNITED STATES of America**

v.

**Anthony Lee BURKS, Appellant.**

**No. 07–2958.**

United States Court of Appeals, Third Circuit.

Argued June 6, 2008.

Opinion filed: Aug. 29, 2008.

Ambro, Circuit Judge, filed a dissenting opinion.

Lisa B. Freeland, Federal Public Defender, Elisa A. Long (argued), Assistant Public Defender, Office of Federal Public Defender, Pittsburgh, PA, Counsel for Appellant.

Mary Beth Buchanan, United States Attorney, Robert L. Eberhardt (argued), Assistant United States Attorney, Office of the United States Attorney, Pittsburgh, PA, Counsel for Appellee.

Before: AMBRO, CHAGARES and COWEN, Circuit Judges.

## OPINION

PER CURIAM.

Anthony Lee Burks appeals the District Court's denial of his motion to suppress evidence of a firearm found in his possession during a traffic stop. He also appeals his sentence. We affirm.

## I. Background

Because we write exclusively for the parties, we provide only a brief recitation of the facts of this case, which arose from a traffic stop of a vehicle in which Burks rode as a passenger. Two Pittsburgh police officers pulled over the car after observing that it had an inoperable centrally mounted rear stop light. A subsequent search resulted in the discovery of a firearm in Burks' possession. This led to his indictment in the United States District Court for the Western District of Pennsylvania on the charge of being in possession of a firearm after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1).

Burks moved to suppress evidence of the gun prior to trial on the basis that the police lacked probable cause or reasonable suspicion to stop his car. He did not challenge the factual assertions of the police officers. Instead, he argued that Pennsylvania law does not make it illegal to drive a car with a non-functioning centrally mounted rear stop light and that the officer's mistake of law made the stop unreasonable under the Fourth Amendment. The District Court rejected this argument and denied the suppression motion.

Burks subsequently pled guilty. His plea agreement preserved his right to appeal the District Court's suppression ruling.

The presentence report identified a Sentencing Guidelines range of 57–71 months. That range reflected an offense level of 18. The Court derived this number from a base offense level of 20, less two points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The Government did not move for a third point for acceptance of responsibility pursuant to § 3E1.1(b). That Guideline provides:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and

490

upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b). Burks nonetheless urged the District Court to award a third point for acceptance of responsibility. It declined to do so. The Court did grant Burks a one-level departure pursuant to U.S.S.G. § 4A1.3, however, reducing the Guideline range to 51–63 months. It sentenced Burks to a 51–month term of imprisonment and three years of supervised release.

This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. With respect to the suppression motion, we exercise plenary review of questions of law and review factual findings for clear error. *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir.2005). If we determine that the District Court has committed no significant procedural error in imposing sentence, we then review the reasonableness of the sentence under an abuse-of-discretion standard, regardless whether it falls within the Guidelines range. *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008).

## III. Analysis

### A. *Burks' Appeal of the Denial of the Suppression Motion*

■ 75 Pa.C.S. §§ 4101–4107, 4301–4310 "establish minimum standards for ve-

hicle equipment the performance of which is related to vehicle safety, noise control and air quality," and bar the sale and use of non-compliant items. Chapter 43 governs lighting. It requires the following for rear lighting:

Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department. If a vehicle is equipped with a centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable State and Federal regulations.

75 Pa.C.S. § 4303(b). This section lists "stop lamps," which implies a minimum requirement of two stop lamps "[o]n the rear—1 on each side of the vertical centerline, at the same height, and as far apart as possible." *See* Table IV of Appendix A to 67 Pa.Code § 153. But the section includes the phrase "not limited to," which anticipates greater restrictions. Indeed, the second quoted sentence provides such a restriction. It implicitly requires that any centrally mounted rear stop light must function. It would not make sense to limit the permissible types of decals or overlays unless the section requires any centrally mounted rear stop light to function and be visible. Limits on blocking a centrally mounted rear stop light would have little effect and would punish decal users selectively if that centrally mounted rear stop light did not have to work in the first place.

Moreover, section 4107(b) of the Pennsylvania Motor Vehicle Code provides that it is a violation of Pennsylvania law to "[o]perate ... on any highway in [Pennsylvania] any vehicle ... when ... the vehicle ... is otherwise in *unsafe condition* or

in violation of departmental regulations." 75 Pa.C.S. § 4107(b)(2) (emphasis added). Subsection (d) of the same section authorizes the imposition of a $25 fine for any such violations. 75 Pa.C.S. § 4107(d). Additionally, another Pennsylvania statute expressly provides: "Any police officer having probable cause to believe that a vehicle or its equipment is unsafe, not equipped as required, or otherwise not in compliance with the law or regulations may inspect the vehicle or its equipment." 75 Pa.C.S. § 4704(a)(3)(ii). The broken brake-light here provided an unsafe condition which justified the officer's stop of the car. Even if we concluded, which we do not, that Section 4303(b) did not require the stop lamp to function, the officer could have stopped the car under Sections 4107 and 4704. *See United States v. Valadez–Valadez*, 525 F.3d 987, 991 (10th Cir.2008) ("The validity of a traffic stop under the Fourth Amendment turns on whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.")

We thus conclude that the police officers correctly interpreted Pennsylvania law when they pulled over the car in which Burks rode for having a non-operational centrally mounted rear stop light. This defeats Burks' Fourth Amendment challenge.

B. *Sentencing Issues*[1]

■ Burks argues that the District Court should have awarded him a third point for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b) even though the United States' Attorney did not move for such an award. We recently held that a District Court lacks authority to award a third point in such circumstances unless the Government has an unconstitutional motive for not moving for a third point. *See United States v. Drennon*, 516 F.3d 160 (3d Cir.2008). The facts of this case are substantially identical to those of *Drennon*. The defendant in that case, like Burks, had pled guilty only after losing his suppression motion. We concluded that the Government's decision not to seek a third point reflected nothing more than a desire to conserve the Government's limited prosecutorial resources. We reach the same conclusion in this case.

Burks also suggests that the District Court erred by failing to consider Burks' meritorious request for a variance pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). However, his counsel explicitly conceded at the sentencing hearing that the District Court had addressed each sentencing issue "adequately." App. 308. Counsel preserved the "objection to the government's failure to file for the third point," but did not mention Burks' desire for a variance. *Id.* The District Court exercised its discretion in granting a sentence at the low end of the Guideline range and considered all relevant factors, including the sentence necessary to achieve the goals set forth in 18 U.S.C. § 3553(a)(2). Burks' argument thus fails.

## IV. Conclusion

We affirm the judgment of the District Court.

---

1. The parties dispute whether Burks waived any right to appeal his sentence in an appellate waiver. We assume without deciding that Burks prevails on this non-jurisdictional procedural point because we will affirm the sentence even if we reach the merits. *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir.2007) (explaining that we retain jurisdiction despite a criminal defendant's appellate waiver).

AMBRO, Circuit Judge, dissenting.

Pennsylvania law does not make it illegal to drive a car with a non-functioning centrally mounted rear brake light. The officer who stopped the car carrying Burks made a mistake of law. This makes the traffic stop and resulting search a violation of the Fourth Amendment. As a result, we have no choice but to vacate Burks' conviction.

As discussed in the Court's opinion, 75 Pa.C.S. §§ 4101–4107, 4301–4310 "establish minimum standards for vehicle equipment the performance of which is related to vehicle safety, noise control and air quality," and bar the sale and use of noncompliant items. Chapter 43 governs lighting. For convenience, I repeat that it requires the following with respect to rear lighting:

> Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps [2] and license plate light, in conformance with regulations of the department. *If a vehicle is equipped with a centrally mounted rear stop light,* a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable State and Federal regulations.

75 Pa.C.S. § 4303(b) (emphasis added). This section makes clear that "a centrally mounted rear stop light" need not appear on every vehicle. If this section imposed such a requirement, permission for a decal or overlay would not depend on "[i]f" the vehicle has a centrally mounted rear stop light.

The question remains whether, if a vehicle has a factory-installed centrally mounted rear stop light, Pennsylvania law requires that light to work. The Commonwealth argues, and my colleagues agree, that governing regulations impose such a requirement. The Commonwealth first turns to the regulation governing lighting systems. 67 Pa.Code § 175.66(a) provides: "Condition of lamps and switches. Every required lamp or switch shall be in safe operating condition as described in § 175.80 (relating to inspection procedure)." Subsection 175.66(e) requires the following with respect to braking lights: "A vehicle specified under this subchapter shall have at least one red stop lamp on each side of rear of vehicle, which shall be illuminated immediately upon application of the service brake." Taken together, these sections do not impose a requirement that any factory-operated central rear brake light must operate properly. Subsection 175.66(a) pertains to "required lamp[s]" and does not mention non-required lamps. Its reference to 67 Pa.Code § 175.80 does not incorporate the standards of that section (*i.e.,* it does not expand the number of required lamps), but merely says that any *required* lamps must satisfy the standards of Subsection 175.80.[3] Section 175.66(e) requires only two side stop lamps and does not mention a centrally mounted rear stop light.

Subsection 175.80's provisions for an inspection procedure include the directions that the inspector "[c]heck the lamps and lenses and reject if ... [a]n exterior bulb or sealed beam, if originally equipped or installed, fails to light properly, except ornamental lights." *Id.* § 175.80(a)(9)(i). This section demonstrates that the car in question here would fail an inspection, but it does not indicate that all the non-orna-

---

**2.** Table IV of Appendix A to 67 Pa.Code § 153 requires two stop lamps "[o]n the rear—1 on each side of the vertical centerline, at the same height, and as far apart as possible."

**3.** This contrasts with other Pennsylvania regulations that require *all* components of the suspension, fuel, and exhaust systems to function when a driver operates a vehicle. *See* 67 Pa.Code §§ 175.62, 175.72, 175.75.

mental lights on a passenger vehicle must operate properly when the driver uses the vehicle on a highway. *Cf. Vicknair v. Texas,* 751 S.W.2d 180, 188–89 (Tex.Crim.App. 1986) (reasoning similarly in applying Texas law).

67 Pa.Code § 153.1 also does not advance the Commonwealth's argument. That section does not impose specific requirements. It merely provides: "This chapter specifies requirements for original and replacement lamps, reflective devices and other associated equipment necessary for signaling and for the safe operation of motor vehicles during darkness and other conditions of reduced visibility." *Id.* § 153.1. This provision does not bestow the general authority on police officers to stop any car they believe to be unsafe when the cause of the perceived safety concern is actually compliant with specific code sections on the subject.

I accordingly disagree with the Court's opinion that the statutory provisions relevant to rear lighting make it illegal to operate a car with a non-functioning centrally mounted rear brake light. I also would not hold that 75 Pa.C.S. § 4107(b)(2), a general rule pertaining to vehicle safety, trumps the specific and detailed requirements laid out elsewhere in the statutory scheme. *See, e.g., Toner v. C.I.R.,* 623 F.2d 315, 319 (3d Cir.1980) (referring to the "the well-known doctrine of construction that specific rules prevail over more general rules"). Moreover, there is no indication in the record that the officer believed the vehicle to be unsafe.

Accordingly, I would conclude that the police officers misinterpreted Pennsylvania law when they believed that the car in which Burks was riding violated applicable regulations by having a non-operational centrally mounted rear stop light. The Commonwealth contends that this mistake of law does not make the stop illegal. It cites our decision in *United States v. Del-fin–Colina,* 464 F.3d 392 (3d Cir.2006), in support of that argument. But *Delfin–Colina* stands for the proposition that a stop is valid when an officer believes that a law has been broken for one stated reason while in fact the law has been broken for another reason supported by the officer's observations. No such alternative valid basis for the stop appears in this record. Accordingly, nothing in our case law allows us to depart from the general rule, acknowledged in *Delfin–Colina,* that mistakes of law prevent the admission of evidence found in a resulting search. *See id.* at 397–400.

In summary, I believe that the Court adds a requirement of its own making to Pennsylvania law and supplies a rationale for the traffic stop that lacks any support in the record. In my view, the District Court erred in denying the motion to suppress the results of the search of the car in which Burks was riding. I thus respectfully dissent.