**UNITED STATES of America**

v.

**Eric COOK.**

**Criminal Action No. 14–646–1.**

United States District Court,
E.D. Pennsylvania.

Signed May 1, 2015.

Thomas M. Zaleski, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

Kathleen M. Gaughan, Federal Defender's Office, Philadelphia, PA, for Eric Cook.

### MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Presently pending before the Court is a Motion to Suppress filed by Defendant, Eric Cook ("Cook"), the Response to Defendant's Motion to Suppress Evidence by the United States ("Government"), and the parties' supplemental briefs. On April 29, 2015, the Court entered an Order advising the parties of its decision to grant Cook's Motion to Suppress for reasons set forth in a memorandum opinion to follow. (Doc. No. 25) Today, the Court enters this Memorandum Opinion setting forth its reasons for granting Cook's Motion to Suppress.

### I. BACKGROUND

On December 12, 2013, at approximately 7:20 p.m., Philadelphia Police Officers,

Travis Washington ("Officer Washington") and Richard Harris ("Officer Harris"), stopped Cook, who was driving a red or burgundy Lincoln Towncar, for not having functional brake lights. (Govt.'s Resp. Mot. to Suppress at 3.) Cook pulled into a shopping center parking lot at Broad Street and Glenwood Avenue, which is a high crime area. (*Id.*) The police officers pulled up their marked patrol car behind Cook's Towncar, and Cook's vehicle suddenly went into reverse and lightly struck the front end of the patrol car. (*Id.*)

When the police officers approached, Officer Washington walked up on the passenger's side, and Officer Harris walked up on the driver's side. (*Id.*) According to the police officers, Cook, who was alone, acted nervously and his hands were shaking. (*Id.*) He could not produce a driver's license, so he was asked to step out of the car.[1] (*Id.*) Officer Harris walked Cook to the back of the Towncar. (*Id.*) By that time, Officer Washington had walked around the back of the Towncar and was standing at the driver's side. (*Id.*) Through the open door of the Towncar, using a flashlight, Officer Washington saw a few inches of a handgun underneath the driver's seat of the car.[2] (*Id.* at 3–4.) Officer Washington seized the firearm, a black CZ 40B .40 caliber semi-automatic pistol loaded with 10 rounds of ammunition. (*Id.* at 4.) The officers arrested Cook for illegal firearm possession, and issued him tickets for driving a motor vehicle without brake lights, as well as operating a motor vehicle without a driver's license. (*Id.*)

Cook's case was ordinally prosecuted in the Philadelphia Court of Common Pleas. (Def.'s Mot. to Suppress at 1.) On October 29, 2014, the Honorable Diana Anhalt convened a suppression hearing based on Cook's Motion to Suppress the gun that was seized during the car stop. (Govt.'s Resp. Mot. to Suppress at 4.) The Commonwealth's sole witness was Officer Washington. (*Id.*) Officer Washington was unable to remember which brake lights were not working. (Def.'s Mot. to Suppress at 1.) He initially testified that he saw the handgun under the passenger seat, but corrected himself that he saw it under the driver's seat after the state prosecutor refreshed his recollection by showing him the original police paperwork. (Govt.'s Resp. Mot. to Suppress at 4.) Judge Anhalt found that Officer Washington's testimony was not credible, and granted Cook's Motion to Suppress. (Def.'s Mot. to Suppress at 1.) The Commonwealth nolle prossed the case. (*Id.*)

The Government decided to adopt this case for federal prosecution indicting Cook for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (*Id.*) In the instant motion, Cook again moves to suppress the Black CZ 40B .40 caliber firearm, serial number A4348, and ten live rounds of ammunition found in the Towncar. (*Id.*) Cook's Motion to Suppress contends that his Fourth Amendment rights were violated by an unconstitutional search and seizure based upon the following: (1) the officers did not have reasonable suspicion that he committed a traffic violation; (2) the officers extended the stop beyond what was necessary to ad-

---

1. Cook did not have a license, but he did produce the car's registration and insurance information. (Def.'s Mot. to Suppress at 1.) The Towncar was registered to Jerome Strand at the same address where Cook resides. (Def.'s Supp. Mem. Law Support Mot. to Suppress at 3 n. 1.) "Cook operated the vehicle with its keys." (*Id.*) "He also voluntarily pro-

vided his name and birth date so the officers could run his information through the appropriate law enforcement databases." (*Id.*)

2. It is unclear whether the Towncar's door was left open by Cook or opened by Officer Washington. *See infra* pp. 578–80.

dress any purported traffic violation absent reasonable suspicion; and (3) the officers searched the car absent probable cause. (*Id.* at 1–2.) The Government argues that Cook's Motion to Suppress is without merit and should be denied. (Govt.'s Resp. Mot. to Suppress at 5.) It asserts that the police conducted a proper traffic stop, which was lawful and did not extend to the point where it amounted to an unreasonable seizure. (*Id.* at 7.) Furthermore, the Government argues that Officer Washington had probable cause to seize the handgun when he observed it in plain view. (*Id.* at 18.)

An evidentiary hearing was held on April 24, 2015, in which Officer Washington and Officer Harris testified, and exhibits were entered into evidence. During the evidentiary hearing, Assistant United States Attorney Thomas M. Zaleski, Esq. ("AUSA Zaleski") introduced the issue of whether Cook's Towncar door was open when Officer Washington viewed the handgun or whether Officer Washington opened the door himself. (N.T. 4/24/2015, p. 36, lines 3–5; 21–22; p. 37, lines 1–4.) Regarding this specific issue, Officer Washington explicitly testified, "I do not remember." (*Id.,* p. 36, line 5.) On cross-examination, he explained, "[w]ell, I don't remember if the door was open or closed. If it was closed then I definitely opened it. If it was already opened then I looked into the car." (*Id.,* p. 53, lines 15–18.) Throughout the hearing, Officer Washington clearly stated many times that he did not recall if he opened the door or not before seeing the handgun. (*Id.,* p. 53, lines 3–19; p. 72, lines 19–20; p. 73, lines 7–12.) Towards the end of the hearing, the Government acknowledged Officer Washington's inability to remember, stat-

ing that "the Government recognizes that Officer Washington can't remember whether the door remained open after the defendant exited it or whether he, himself opened it, we don't know, he can't remember from what I can tell." (*Id.,* p. 79, lines 15–19.)

After requesting a brief recess, Cook's Assistant Federal Defender, Tracy Frederick, Esq. ("Defender Frederick"), seized upon this issue stating that "[i]t seems clear this morning that the issue has narrowed down to the car door and whether or not it is opened or closed when the search took place in this case." (*Id.,* p. 77, lines 11–14.) Based upon Officer Washington's testimony, Defender Frederick argued that his failure to recall whether he opened the door or not "is not enough . . . for the plain view exception to be proven by a preponderance of the evidence. At best it is 50/50. If he opened the door himself to see the gun, this is a bad search and there is no question about it . . . because he certainly did not have probable cause to do so." (*Id.,* p. 78, lines 10–16.) AUSA Zaleski argued that an inference can be made from the testimony in this case that a car door usually remains open in a situation where someone exits a car when there are police officers standing there. (*Id.,* p. 81, lines 4–8.) He went on to state, "[o]f course, we don't ultimately know the question because Officer Washington couldn't remember whether he had opened the door or not or it was a door that had already been—that was already opened when he approached and made the observation that he testified to." (*Id.,* p. 81, lines 17–22.)

AUSA Zaleski asked the Court for the opportunity to brief the issue, and Defender Frederick agreed.[3] (*Id.,* p. 81–82.)

---

**3.** Although he was the one who introduced the car door issue, AUSA Zaleski told the Court, "the narrow question that we have come to here after this hearing hasn't been

fully briefed . . . by the parties. It certainly hasn't been by the defense and this is a fact that just didn't become clear to me at the time when I was interviewing the officers before

The Court granted the request. (*Id.* p. 82.) The parties filed their supplemental briefs on April 27, 2015. (Doc. Nos. 23, 24.)

## II. STANDARD OF REVIEW

Rule 41(h) of the Federal Rules of Criminal Procedure provides "[a] motion to suppress evidence may be made in the court of the district of trial as provided in Rule 12." For a motion to suppress, "[a]s a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995) (citation omitted). Where the search being challenged was made without a warrant, as is the case here, the burden shifts to the Government to demonstrate that the warrantless search or seizure was conducted pursuant to one of the exceptions to the warrant requirement. *Id.; see also United States v. Herrold,* 962 F.2d 1131, 1137 (3d Cir.1992). The Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible. *See United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

## III. DISCUSSION

The Fourth Amendment of the Constitution of the United States protects citizens against unreasonable searches and seizures. U.S. Const. Amend. IV. While there is a lesser expectation of privacy in vehicles, "a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *New York v. Class,* 475 U.S. 106, 114–15, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). The lawfulness of the conduct of Officer Washington and Officer Harris at issue herein, for Fourth Amendment purposes, turns on the following two considerations: (1) whether the initial stop of Cook's Towncar was lawful; and (2) whether the officers lawfully seized Cook's firearm, which the Government seeks to justify under the "plain view" doctrine. While we find that the initial stop of Cook's Towncar was lawful, we do not find that the Government has demonstrated by a preponderance of the evidence that the firearm was in plain view at the time it was seized. Accordingly, we granted Cook's Motion to Suppress.

### A. The Traffic Stop—Reasonable Suspicion

Although a traffic stop is a "seizure" within the meaning of the Fourth Amendment, such stops have been "historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." *United States v. Delfin–Colina,* 464 F.3d 392, 396 (3d Cir. 2006). Under the framework of *Terry,* a traffic stop is reasonable if it is supported by "a reasonable, articulable suspicion that criminal activity is afoot." *Id.* (citations and internal quotation marks omitted). "Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Id.* (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

Under this standard, the focus is on whether the circumstances of the stop give rise to an objectively reasonable suspicion of illegal activity and is not on the officers' actual motivation for making the stop. *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "[A] police officer does have the initial burden of providing the 'specific, articulable facts' to justify a reasonable

this hearing about this opening and closing—opening of the door, whether it remained open." (N.T. 4/24/2015, p. 80, lines 21–25; p. 81, lines 1–3.)

suspicion to believe that an individual has violated the traffic laws." *Delfin–Colina,* 464 F.3d at 397. "In determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience." *United States v. Givan,* 320 F.3d 452, 458 (3d Cir.2003). The Government has the burden of establishing the existence of a reasonable suspicion. *United States v. Coward,* 296 F.3d 176, 180 (3d Cir.2002).

Here, the brake lights of Cook's Towncar were in violation of Pennsylvania's traffic laws giving Officer Harris and Officer Washington reasonable suspicion to make the stop. Both Officer Harris and Officer Washington clearly testified that they noticed that Cook's Towncar did not have operating brake lights when they were behind him in their patrol car driving through two intersections that required Cook's Towncar to brake. (N.T. 4/24/2015, p. 6, lines 11–18; p. 15, lines 21–23; p. 17, lines 14–15; p. 27, lines 18–19; p. 28–29; p. 42, lines 6–8.) The Court finds the testimony of the police officers regarding the brake lights issue to be credible.

Pennsylvania's Motor Vehicle Code states that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department." 75 Pa. Cons.Stat. § 4303(b). This statute subjected the Towncar's lights to 67 Pa. Code § 175.66(e) (requiring that passenger cars "have at least one red stop lamp on each side of rear of vehicle, which shall be illuminated immediately upon application of the service brake") and 67 Pa.Code § 175.80(a)(9)(I) (stating that a vehicle is not up to code if "[a]n exterior bulb or sealed beam, if originally equipped or installed, fails to light properly"). *See* 67 Pa.Code §§ 175.66(e); 175.80(a)(9)(I).

Based upon this regulatory framework, the broken brake lights gave the officers sufficiently particular reasons to believe that the Towncar was in violation the Pennsylvania Motor Vehicle Code. *See United States v. Jones,* 506 Fed.Appx. 128, 131 (3d Cir.2012) ("Here, the white Acura's broken center brake light was in violation of Pennsylvania's traffic laws and gave the officers reasonable suspicion to make the stop."); *United States v. Hampton,* 351 Fed.Appx. 723, 727 (3d Cir.2009) (upholding District Court's rejection of Fourth Amendment claim "since an unlit brake light is a violation of 75 Pa. Cons.Stat. § 4303(b) and any technical violation of a traffic code legitimatizes a stop"); *United States v. Burks,* 290 Fed.Appx. 488, 491 (3d Cir.2008) ("The broken brake-light here provided an unsafe condition which justified the officer's stop of the car."); *United States v. Mosley,* 454 F.3d 249, 252 (3d Cir.2006) (stating that "any technical violation of a traffic code legitimatizes a stop") (citing *Whren,* 517 U.S. 806, 116 S.Ct. 1769).

The Court has credited the testimony of Officer Washington and Officer Harris that they observed Cook commit a motor vehicle code violation. Consequently, we must reject Cook's initial argument that the police officers were without legal justification for stopping his Towncar. Accordingly, Officers Harris and Washington had a reasonable suspicion that the broken brake lights violated Pennsylvania's Motor Vehicle Code and lawfully stopped Cook's Towncar.

### B.   Seizure of Firearm—Plain View

■ The second question implicated by the officers' conduct on the evening of December 12, 2013, is whether Officer Washington lawfully seized Cook's firearm, or, alternatively, whether the discovery of the firearm was the product of an unlawful

search. Contending that Cook's firearm was in plain view at the time of the traffic stop, the Government argues that its seizure was justified under the plain view exception to the Fourth Amendment's warrant requirement.[4] The Government's introduction of the unsolved issue regarding whether Cook's car door was left open or was opened by Officer Washington leaves the Court with no alternative, but to find that the Government has not proven by a preponderance of the credible evidence that Cook's firearm was in plain view at the time it was observed by Officer Washington. Consequently, we granted Cook's Motion to Suppress evidence of the firearm.

■ A police officer can seize evidence in plain view without a warrant so long as certain requirements have been met. The application of the plain view doctrine thus turns on three requirements: (1) "the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) "the incriminating character of the evidence must be immediately apparent"; and (3) "the officer must have a lawful right of access to the object itself." *United States v. Menon*, 24 F.3d 550, 559 (3d Cir.1994) (quoting *Horton v. California*, 496 U.S. 128, 135–141, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ("Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.")).

In our case, we agree with the defense's statement that "if the Government could prove Officer Washington noticed the firearm through an open car door as the officers were escorting Mr. Cook out of the Towncar, the firearm would be admissible under the plain view exception to the warrant requirement."[5] (Def.'s Supp. Mem. Law Support Mot. to Suppress at 8.) It is the fact that the Government cannot prove by a preponderance of the evidence that the door was, in fact, left opened that is fatal to the plain view exception. If the car door was closed, which we do not officially know given the evidence provided, the firearm could not have been in plain view under the facts of our case. The Government asserts that "the available evidence permits the inference by a preponderance that the defendant left the door to his car open after he stepped out of the vehicle" and "[t]he combined testimony of the officers ... strongly indicates that the car door remained open." (Govt.'s Supp. Resp. at 4–5.)

Deciding the issue of whether the officers lawfully seized Cook's handgun turns on whether the Government has proven by a preponderance of the evidence that the handgun was visible to Officer Washington at the time that he stood outside of Cook's

---

**4.** The Government argues that the seizure of Cook's firearm was legal exclusively based upon its contention that the gun was in plain view at the time it was seized. It does not suggest that it would have been lawful for Officer Washington to have conducted a search of Cook's automobile if the firearm had not been in plain view. *See Arizona v. Gant*, 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (warrantless search of automobile permissible "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest").

**5.** The defense states "[t]o be sure, it is not Officer Washington's use of the flashlight which rendered his conduct an unlawful search. The Supreme Court has made clear that police, standing outside of a vehicle, may illuminate a vehicle's interior and change positions for better viewing without running afoul of the Fourth Amendment." (Def.'s Supp. Mem. Law Support Mot. to Suppress at 8.) (citing *Texas v. Brown*, 460 U.S. 730, 739–40, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)).

Towncar. *See Texas v. Brown*, 460 U.S. at 740, 103 S.Ct. 1535 (finding that police officers have a lawful right of access to "that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers"). It remains unclear if Officer Washington opened the door or not; however, it is clear that he needed the car door to be open in order to provide the angle or position needed to observe the weapon in plain view while remaining outside of the Towncar. Not knowing the status of the door leaves the Court completely guessing as to whether Officer Washington had a right of access to Cook's Towncar. As such, the Government has failed to meet its burden of showing that Officer Washington had a right of access to Cook's Towncar. *See United States v. Turner*, No. 13–40050, 2013 WL 5727404, at *10 (D.Kan. Oct. 22, 2013) (finding, in part, that the Government did not establish a right of access to defendant's vehicle stating "the Government has not met its burden of showing the firearm was discovered under the plain view doctrine because the video of the search does not corroborate [the Police Corporal's] testimony that the driver's side

door was ajar after Defendant exited the vehicle").

■ In view of the particular circumstances of this case, the plain view exception is not applicable.[6] As a result, Cook's Motion to Suppress was granted. Accordingly, the firearm evidence must be suppressed.[7]

## IV. *CONCLUSION*

In summary, we conclude that the initial stop of Cook's Towncar was lawful because Officer Harris and Officer Washington had reasonable suspicion to stop his vehicle based on their observations that his rear brake lights were not functioning. However, we do not find that the Government has demonstrated by a preponderance of the evidence that the firearm was in plain view at the time it was seized. Consequently, under the facts of our case, the plain view exception does not apply to the rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *Gant*, 556 U.S. at 338, 129 S.Ct. 1710 (citation omitted). Based upon all of the above reasons, we granted Cook's Motion to Suppress by

---

6. We note that the inevitable discovery doctrine may be applicable on the facts of this case. *See United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir.1998) (Under the inevitable discovery doctrine, "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received.") However, it has not been raised, and there has been no attempt to lay the groundwork for it, i.e., the Philadelphia Police Department's standard procedures for impounding and inventory searches. As such, we do not consider it.

7. Since we have found that the Government has failed to satisfy its burden for the applica-

tion of the Plain View Doctrine, we reject the Government's attempt at circumventing the imposition of the exclusionary rule by relying on *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). (*See* Gov. Supp. Resp. at p. 8.) Unlike *Herring*, where "the error was the result of isolated negligence attenuated from the arrest," we are compelled to hold that based upon our factual findings, the police conduct was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 137, 144, 129 S.Ct. 695. Thus, the *Herring* calculus is satisfied, and the exclusionary rule is triggered. *Id.* at 144, 129 S.Ct. 695.